*Alexander Dykes v. State of Maryland*
No. 70, September 2014 Term


**Criminal Procedure - Right to Counsel - Discharge of Appointed Counsel**. When a trial court finds that an indigent defendant has a meritorious reason for discharging appointed counsel, the discharge of counsel is not itself a waiver of the right to counsel. The trial court must advise the defendant of the right to, and advisability of being represented by, counsel and appoint new counsel, if the indigent defendant requests representation. Maryland Rule 4-215.


**Criminal Procedure - Right to Counsel - Inherent Power of the Court to Appoint Counsel**. Although an indigent defendant's right to appointed counsel is ordinarily satisfied through representation by the Office of the Public Defender or a panel attorney pursuant to the Public Defender Act, a trial court retains inherent authority to appoint counsel for an indigent defendant in the rare case where the defendant has not waived counsel and neither the Public Defender nor a panel attorney is available to provide representation.

Circuit Court for Baltimore County
Case No. 03-K-11-006626 IN BU
Argued: April 8, 2015

IN THE COURT OF APPEALS
OF MARYLAND

No. 70

September Term, 2014

—————————————————

ALEXANDER DYKES

v.

STATE OF MARYLAND

—————————————————

Barbera, C.J.
*Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

—————————————————

Opinion by McDonald, J.
Watts, J., concurs

—————————————————

Filed: August 27, 2015

*Harrell, J., now retired, participated in the hearing and conference of the case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

In a criminal case, the assistance of counsel is a fundamental, constitutional right. The following four statements, all related to that right, are true:

1. A defendant has a right to counsel, but may waive that right.

2. An indigent defendant has a right to free appointed counsel, but has no right to select counsel of his or her choice.

3. In Maryland, the right to appointed counsel is ordinarily satisfied pursuant to the Public Defender Act by assignment of an assistant public defender or a panel attorney, and, on rare occasion, pursuant to the inherent power of the trial court to appoint counsel.

4. A defendant has a right to self-representation, but it may be unwise to exercise that right.

There is a tension among those propositions, particularly when an indigent defendant seeks to discharge appointed counsel and makes contradictory statements about his or her reasons and intentions. Maryland Rule 4-215(e) is designed to help trial courts navigate that no man's land. A key guidepost is whether the trial court finds the reason for discharging counsel to be "meritorious." An indigent defendant entitled to free appointed counsel might have a meritorious reason for discharging counsel and, if so, retains the right to appointed counsel. If the reason for the discharge is not meritorious, the defendant may be deemed to waive counsel if he or she proceeds with the discharge.

In this case, an indigent defendant, whose mental competency was questioned by the court and counsel at several junctures, appeared before a series of different judges concerning his dissatisfaction with appointed counsel. Collectively, the Circuit Court was more than attentive to his complaints and concerns about counsel and was scrupulous in advising him

about his right to, and the advisability of, having counsel. A mis-step, however, occurred when, upon finding that his reason for discharging an assistant public defender was "meritorious," the court treated his decision to discharge that counsel as a waiver of counsel, despite his clear requests for counsel. The defendant was subsequently convicted at a trial in which he represented himself. Accordingly, we must reverse his conviction and remand for appointment of counsel and a new trial.

# I

## Background

### A. *Right to Counsel in Criminal Cases*

The right of a defendant in a criminal case to counsel is guaranteed by the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights.[1] That right also protects a defendant's decision to proceed *pro se*. In other words, a criminal defendant "has an independent constitutional right to have the effective assistance of counsel and to reject that assistance and defend himself." *Williams v. State*, 321 Md. 266, 270-71, 582 A.2d 803 (1990). A defendant may waive the right to counsel if the defendant does so knowingly and voluntarily. *Fowlkes v. State*, 311 Md. 586, 589, 536 A.2d 1149 (1988). But "courts indulge every reasonable presumption against its waiver." *Parren v. State*, 309 Md. 260, 263, 523 A.2d 597 (1987). If a defendant cannot afford counsel when

---

[1] The Sixth Amendment says, "In all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defense." U.S. Constitution, Amendment VI. Article 21 provides "That in all criminal prosecutions, every man hath a right … to be allowed counsel." Maryland Declaration of Rights, Article 21.

the charges carry a risk of incarceration, the defendant has a right to counsel appointed at government expense. *Gideon v. Wainwright*, 372 U.S. 335 (1963); *Argersinger v. Hamlin*, 407 U.S. 25 (1972).

While an indigent defendant is entitled to appointed counsel, that right should not be mistaken for a right to select the attorney of one's choice. *State v. Brown*, 342 Md. 404, 413, 676 A.2d 513 (1996). The right to counsel "guarantee[s] an effective advocate for each criminal defendant rather than … ensur[ing] that a defendant will inexorably be represented by the lawyer whom he prefers." *Alexis v. State*, 437 Md. 457, 475, 87 A.3d 1243 (2014) (quoting *Wheat v. United States*, 486 U.S. 153, 159 (1988)).

### B.     *Office of the Public Defender*

To carry out the constitutional guarantee, the General Assembly created the Office of the Public Defender ("OPD") in 1971 to ensure representation for indigent criminal defendants.[2]   Chapter 209, Laws of Maryland 1971, *now codified* at Maryland Code, Criminal Procedure Article ("CP"), §16-101 *et seq.*  The OPD may provide representation through its own staff of assistant public defenders, or through a panel attorney – a private attorney qualified and willing to provide representation, paid with public funds.  CP §§16-204, 16-208.  In either case, an indigent defendant is not entitled to a specific appointed attorney. *See State v. Campbell*, 385 Md 616, 627-28, 870 A.2d 217 (2005).

---

[2] An "indigent individual" is someone who "cannot provide the full payment of an attorney and all other necessary expenses of representation" without "undue financial hardship," as verified by OPD.  CP §§16-101(d), 16-210.

3

*C.*     *Trial Judge's Inherent Authority to Appoint Counsel*

There is authority, inherent in the nature of the judicial branch of government,[3] for a trial court to appoint counsel in order to carry out its constitutional function. *In re Elrich S.*, 416 Md. 15, 37-38, 5 A.3d 27 (2010); *Office of Public Defender v. State*, 413 Md. 411, 434, 993 A.2d 55 (2010) (trial court, as "ultimate protector" of constitutional right to counsel, had authority to appoint attorney from OPD to represent indigent criminal when OPD declined representation); *Workman v. State*, 413 Md. 475, 489, 993 A.2d 94 (2010) (same);[4] *Arey v. State*, 400 Md. 491, 508-12, 929 A.2d 501 (2007) (circuit court has inherent power to appoint counsel in post-conviction proceeding for DNA testing if necessary "to further the interest of justice"). This Court has recognized that "indigent defendants enjoy a constitutional and statutory entitlement to appointed representation – either by the OPD, panel attorneys or *by court-appointed counsel*." *State v. Walker*, 417 Md. 589, 604-5, 11 A.3d 811 (2011) (emphasis added). Prior to enactment of the Public Defender Act, courts exercised this

_____

[3] This Court has explained that "[t]he concept of inherent authority ... is grounded in the understanding that courts must possess certain powers in order to function as courts." *Wynn v. State*, 388 Md. 423, 433, 879 A.2d 1097(2005). "The inherent powers of the court are not derived from legislative grant or specific constitutional provisions, but from the very fact that the court has been created and charged by the Maryland Constitution with certain duties and responsibilities." *Arey v. State*, 400 Md. 491, 508-9, 929 A.2d 501 (2007). As to scope, "[t]he inherent powers of the court are those powers which are necessary to exercise its jurisdiction, administer justice, and preserve its independence and integrity." 400 Md. at at 509.

[4] Following the decisions in *Office of Public Defender* and *Workman*, the Legislature amended CP §16-213 to preclude a court from exercising its inherent authority to appoint an attorney from the OPD. Chapter 244, Laws of Maryland 2011. Thus, a trial court may only exercise its inherent authority to appoint an attorney from outside OPD.

authority to implement the constitutional right to counsel. *See Baldwin v. State*, 51 Md. App. 538, 549-50, 444 A.2d 1058 (1982) (describing transition from court-appointed defense counsel to the public defender system).

The Public Defender Act does not preclude a trial court from independently appointing counsel for an indigent defendant when the OPD is unable or unwilling to provide representation. In particular, nothing in the Public Defender Act prohibits a trial court from appointing a counsel for an indigent defendant if the OPD has a conflict or if it declines to provide representation. CP §16-213. But even in the absence of a conflict or a declination by the OPD, a trial court has inherent authority to appoint counsel. *In re Elrich S.*, 416 Md. at 37-40 (circuit court had "inherent power" to appoint counsel to represent a child in a delinquency proceeding).

## D.     *Right of Self-Representation*

Although it may be an unwise choice, a defendant nonetheless has the right to self-representation in a criminal prosecution. "The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." *Faretta v. California*, 422 U.S. 806, 819 (1975). The Supreme Court has noted, "The common-law rule … has evidently always been that no person charged with a criminal offence can have counsel forced upon him against his will." *Id*. at 826. Further, because the defendant "will bear the personal consequences of a conviction," the defendant "must be free personally to decide whether in his particular case counsel is to his advantage." *Id.* at 834. Thus, the right of self-representation "exists to affirm the dignity and autonomy

of the accused and to allow the presentation of what may, at least occasionally, be the accused's best possible defense." *Parren v. State*, 309 Md. at 263. Because exercise of the right of self-representation inevitably means waiver of the right to counsel, a defendant must "clearly and unequivocally" assert the right of self-representation. *Pinkney v. State*, 427 Md. 77, 95, 46 A.3d 413 (2012).

### E.     *Maryland Rule 4-215(e)*

Maryland Rule 4-215 implements a defendant's right to waive counsel, and incorporates safeguards to ensure that the defendant is acting knowingly and voluntarily in making that choice. Maryland Rule 4-215(e) governs situations in which a defendant already is represented and seeks to discharge counsel. It states:

> If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request. If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel. If the court permits the defendant to discharge counsel, it shall comply with subsections (a)(1)-(4) of this Rule if the docket or file does not reflect prior compliance.

Parsing this rule, it can be broken down into three steps, as follows.

6

*(1) The defendant explains the reason(s) for discharging counsel*

While the rule refers to an explanation by the defendant, the court may inquire of both the defendant and the current defense counsel as to their perceptions of the reasons and need for discharge of current defense counsel.

*(2) The court determines whether the reason(s) are meritorious*

The rule does not define "meritorious." This Court has equated the term with "good cause." *See Gonzales v. State*, 408 Md. 515, 531-33, 970 A.2d 908 (2009); *Campbell*, 385 Md. at 627; *State v. Brown*, 342 Md. 404, 413, 676 A.2d 513 (1996). This determination – whether there is "good cause" for discharge of counsel – is "an indispensable part of subsection (e)" and controls what happens in the third step. *Williams*, 321 Md. at 273.

*(3) The court advises the defendant and takes other action*

The court may then take certain actions, accompanied by appropriate advice to the defendant, depending on whether it found good cause for discharge of counsel – *i.e.*, a meritorious reason.

If the court finds that the defendant has a meritorious reason for discharge, the court is to:

- permit discharge of counsel

- continue the action, if necessary

- advise the defendant that, if new counsel does not enter an appearance, the defendant will be unrepresented

7

- conduct further proceedings in accordance with Rule 4-215(a) which governs a defendant's first appearance in court without counsel[5] – if there has not been prior compliance

Thus, once a meritorious reason for discharge is found, the situation reverts – insofar as concerns the right to counsel – to that of a freshly arraigned, unrepresented defendant. The court is to "grant the request [for discharge] and, if necessary, give the defendant an opportunity to retain new counsel." *Williams*, 321 Md. at 273. In the case of an indigent defendant, this means an opportunity for new appointed counsel.

If, on the other hand, the court finds that there is no meritorious reason for discharge of defense counsel, the court is to:

- advise the defendant that the trial will proceed as originally scheduled

- advise that the defendant will be unrepresented if the defendant discharges counsel and does not have new counsel

---

[5] Subsection (a) of the rule provides that the court shall:

(1) Make certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.

(2) Inform the defendant of the right to counsel and of the importance of assistance of counsel.

(3) Advise the defendant of the nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any.

(4) Conduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel.

Maryland Rule 4-215(a)(1)-(4).

8

- conduct further proceedings in accordance with subsection (a) of the rule – which governs a defendant's first appearance in court without counsel – if there has not been prior compliance

As is evident, in a key difference from the situation where there is a meritorious reason for discharge, the rule does not direct the court to allow a continuance. In such a situation a defendant is not entitled to substitute counsel. "Rule 4-215(e) embodies the principle ... that an *unmeritorious* discharge of counsel and request for new counsel, in an apparent effort to delay the trial, may constitute a waiver of the right to counsel" if done knowingly and voluntarily. *Fowlkes v. State*, 311 Md. at 603. In addition, while the rule speaks of the court "permitting" a defendant to discharge counsel, it has no choice if the defendant chooses to exercise the right to self-representation.[6] For those reasons, the rule requires the court to advise the defendant of the consequences of discharge.

It follows, therefore, that a discharge of counsel for a *meritorious* reason does not automatically constitute waiver of the right to counsel. This is distinct from non-meritorious discharge of counsel, which may constitute a waiver of counsel.

**II**

**State v. Dykes**

*A.* *Charges*

John Fischer left his Baltimore County home on the morning of October 7, 2010, and when he returned just before 6:00 p.m., he found that someone had broken into his house,

---

[6] If the defendant seeks a substitution of new counsel on the eve of trial, for a non-meritorious reason, the court may decline to allow it and, in the case of an indigent defendant, decline to appoint substitute counsel.

9

ransacked it, and taken several personal items. One of the windows was broken and there was blood around that window. Investigators lifted fingerprints and processed the blood for DNA. Almost one year later, in September 2011, a detective received a match on one of the fingerprints to those of Petitioner Alexander Dykes.[7]

On November 21, 2011, Mr. Dykes was indicted by a grand jury on the following charges with respect to the burglary of Mr. Fischer: first degree burglary, third degree burglary, fourth degree burglary, theft of property having a value between $1,000 and $10,000, and malicious destruction of property with a value less than $500.

## B. Pre-Trial Proceedings

Mr. Dykes appeared at approximately 10 pre-trial hearings before six different judges. At those hearings, he expressed at various times – and not always consistently – an interest in being represented by counsel, distrust of his assigned lawyer and of the OPD generally, a desire to discharge counsel, and resignation at being represented by OPD or at having to represent himself. At critical junctures he repeatedly requested the appointment of counsel. The hearings are recounted in some detail below.

*December 20, 2011 – Arraignment (Judge Jan Marshall Alexander)*

On December 20, 2011, Mr. Dykes was arraigned in the Circuit Court for Baltimore County on the charges in the Fischer case. The court informed Mr. Dykes of his right to be represented by an attorney and told him that if he could not afford one, he could apply to the

---

[7] Investigators eventually matched the DNA from a buccal (cheek) swab of Mr. Dykes with DNA from the blood found at the crime scene.

OPD for free representation. Mr. Dykes stated that he had previously applied for an assistant public defender but preferred not to be represented by the OPD.

*January 24, 2012 – Waiver of Counsel (Judge John Grason Turnbull, II)*

One month later, Mr. Dykes appeared in court, again without counsel. The court asked if he wanted an attorney and he replied, "No, sir." The case was postponed and trial was set for two weeks later on February 8, 2012.

*Appointment of Counsel and Motion to Fire Public Defender*

One day before trial, on February 7, Mr. Dykes requested a postponement to obtain counsel. The request was unopposed, and trial was rescheduled for April 30, 2012.

On February 22, 2012, Assistant Public Defender Jerri Peyton-Braden entered her appearance as counsel for Mr. Dykes, but soon afterward Mr. Dykes filed a Motion to Fire Public Defender.

*March 19, 2012 – Motion to Discharge Counsel Withdrawn (Judge Michael J. Finifter)*

The court held a motions hearing on March 19, 2012, where Mr. Dykes, appearing with Ms. Peyton-Braden, withdrew the motion to discharge his attorney. He told the court that he had "made a mistake."

*April 30, 2012 – New Charges and Postponement (Judge Turnbull)*

In the meantime, Mr. Dykes had been charged in another case with first degree burglary, third degree burglary, fourth degree burglary, theft over $500, and malicious

11

destruction of property less than $500. That case was considered with the Fischer case at each subsequent hearing, with the understanding that the cases would be tried separately.

On April 30, 2012, with Mr. Dykes' assent, both cases were postponed to give the defense additional time to prepare, with trials in both cases set for June 18, 2012. Mr. Dykes' Assistant Public Defender, Ms. Peyton-Braden, continued to represent him at this hearing.

*June 18, 2012 – Postponement (Judge Turnbull)*

On the scheduled trial date, Mr. Dykes appeared again in court with his assistant public defender. The court granted another postponement after Ms. Peyton-Braden advised the court that she did not have discovery for one of Mr. Dykes' cases, although she thought that the State had provided it. She also indicated that she needed to review some of the evidence with Mr. Dykes and that there was further investigation that he wanted her to do. Finally, defense counsel requested that the court arraign Mr. Dykes again because of his "psychiatric issues," and the court obliged. Trial was reset for September 24, 2012.

On July 9, 2012, three weeks after the postponement hearing, Mr. Dykes filed a motion to waive counsel.

*July 26, 2012 – Hearing on Motion to Waive Counsel (Judge Kathleen Cox)*

On July 26, 2012, Mr. Dykes again returned to court for a hearing on his motion to waive counsel. Ms. Peyton-Braden informed the court that Mr. Dykes was upset with her. She could not find DNA evidence that the State should have provided in discovery, and she did not know whether the State had failed to provide it, or she had lost it during a recent

12

move. Mr. Dykes told the court, "I'm gonna prove that she lied and I'm gonna prove that she's incompetent." In response to a question whether he wanted Ms. Peyton-Braden "to continue to represent" him, he replied, "No, I do not." Before the court could make any further inquiry, however, Mr. Dykes became agitated, asked to be deported to Canada, and was forcibly removed from the courtroom. The court ordered a competency evaluation of Mr. Dykes and another hearing concerning his representation, which was scheduled for August 9.

*August 9, 2012 – Hearing Concerning Competency and Counsel (Judge Cox)*

The parties returned to court on August 9, 2012 for a hearing concerning Mr. Dykes' competency. The court stated that the Office of Forensic Services found Mr. Dykes competent to stand trial, and neither party objected to those findings. Mr. Dykes apologized for his conduct at the prior hearing, but reiterated his dissatisfaction with his assistant public defender. The court asked Mr. Dykes if he wished to keep Ms. Peyton-Braden as his attorney or discharge her. Ms. Peyton-Braden announced, "If Mr. Dykes discharges me he discharges the Office of the Public Defender as well." Later in the discussion, the court reiterated, "[I]f you discharge Ms. Peyton-Braden you will not get another assigned public defender. You then have the choice of either hiring an attorney at your own expense or representing yourself[.]" The court cautioned that it would be a "very bad idea" to represent himself. Mr. Dykes said that he would attempt to proceed with Ms. Peyton-Braden as his attorney, and that he would "like to try to get past this." The court determined that Mr.

13

Dykes did not want to discharge his attorney, and also found that there was no "good cause" for doing so. Trial was scheduled for September 24, 2012.

*September 24, 2012 – Withdrawal of Counsel and Postponement (Judge Turnbull)*

Six weeks later, on the scheduled trial date, Ms. Peyton-Braden requested to withdraw from the case because of a personal conflict. She sought a postponement so that Mr. Dykes could be assigned a panel attorney or another assistant public defender.[8] She also indicated that the OPD would likely file "an incompetent to stand trial plea" and have their own doctors conduct a competency evaluation. She stated that she would like to have Mr. Dykes sent to Spring Grove or Perkins for a full examination and that the previous examination had been "very cursory."[9] Ms. Peyton-Braden told the court that she would prepare an order and send it in for the judge's signature. On October 3, 2012, she filed The Order for Examination For Competency to Stand Trial. The case was rescheduled for December 6, 2012.

In the meantime, on October 10, 2012, Assistant Public Defender Matthew Gordon entered his appearance on behalf of Mr. Dykes, and Ms. Peyton-Braden's appearance was stricken.

*December 6, 2012 – Hearing Concerning New Counsel (Judge Turnbull)*

At a hearing when the case returned to court on December 6, 2012, Mr. Dykes registered his dissatisfaction with Mr. Gordon. He said that he believed that the OPD altered

---

[8] It is not clear from the transcript whether Mr. Dykes was present at this hearing.

[9] Spring Grove Hospital Center and Clifton T. Perkins Hospital are State-owned psychiatric residential facilities run by the Department of Health and Mental Hygiene.

14

paperwork to make him look guilty. He became irate, threatened to punch someone, and was removed from the courtroom. At the time, the court noted that "the Defendant has some substantial problems," and that the case may need to be specially assigned. The trial was once again postponed to March 5, 2013.[10]

*March 5, 2013 – Second Competency Hearing (Judge John J. Nagle, III)*

On March 5, 2013, Mr. Dykes appeared in court and another competency hearing was conducted. His Assistant Public Defender, Mr. Gordon, argued that Mr. Dykes was not competent to stand trial under the two-part test articulated in both CP §3-101(f) and *Dusky v. United States,* 362 U.S. 402 (1960). The test requires the defendant to be able to (1) understand the proceedings *and* (2) assist in his defense. Mr. Gordon argued that, while Mr. Dykes met the first prong, he failed the second.

The defense presented the testimony of Dr. Lawrence Donner that "…this [was] the first time I ever found someone who could not work with their attorney in their own defense." Dr. Donner concluded that Mr. Dykes had brain damage, and therefore was not competent to stand trial. In response, the State submitted two expert reports finding that Mr. Dykes was competent. Judge Nagle found that Mr. Dykes met both prongs of the test and was competent to stand trial. Toward the end of the hearing, Mr. Dykes became overwrought and was again removed from the courtroom.

---

[10] There was a dispute on March 5 as to whether March 5 was set as a trial date or only as a hearing date to determine Mr. Dykes' competency. Mr. Gordon stated that, although it was set for trial on the docket, at the December 6 hearing there was no discussion that March 5 would be the actual trial date.

15

*March 5, 2013 – Motion to Discharge Counsel (Judge Susan Souder)*

Later the same day, Mr. Dykes appeared before a different judge on his motion to discharge counsel. The following dialogue took place:

MR. DYKES:             I don't, I don't want to represent myself, but I do not want the Public Defender's Office to represent me because I can prove, without a shadow of a doubt, that they ma[nipulated] my trial and they falsified documents. And I have it right here if you will let me show you, but nobody will.

                                       ***

THE COURT:          First, you are represented by an attorney. So if you wish to proceed without counsel I'll make that determination.

MR. DYKES:             Yes ma'am.

THE COURT:          But you'll have, we'll have to proceed in an orderly fashion.

MR. DYKES:             Yes ma'am.

THE COURT:          So your choices are to be represented by the Public Defender's Office, Mr. Gordon, or to represent yourself. There is no third option. There are only those two options.

MR. DYKES:             Okay. Well I know I'm not intelligent enough to represent myself, --

THE COURT:          Then you will have to be, --

MR. DYKES:             -- but I do not want this --

THE COURT:          -- you do not have that choice Mr. Dykes.

MR. DYKES:             Okay. I, I, I don't want the Public Defender's Office to represent –

THE COURT:          Then you must represent yourself.

16

MR. DYKES:       There it'll be then.

THE COURT:       All right.

MR. DYKES:       But I don't wish that.  I don't ask for that.

THE COURT:       Well you don't have a choice.

MR. DYKES:       Okay. I don't want the public defenders to speak for me
                 –

THE COURT:       All right.

MR. DYKES:       --  in this court.

The court then heard Mr. Dykes' reasons for distrusting the OPD which it summarized as

follows:

THE COURT:       So Mr. Dykes, you're telling me that the reason you want
                 to fire your public defender is because you feel that the
                 Public Defender's Office has manipulated evidence,
                 they've not been truthful with the court, you wanted to
                 have a hearing and they waived your right to a hearing,
                 and you feel that there's a conspiracy between the Public
                 Defender's Office and the State's Attorney's Office.
                 Are those all the reasons why you wish to fire the Public
                 Defender's Office?

MR. DYKES:       Exactly.

The court confirmed that Mr. Dykes understood that he would represent himself, and

clarified a few details about his case.[11]  It then began to make a final ruling on Mr. Dykes'

request to discharge counsel.

---

[11] The Assistant Public Defender reported to the court that the OPD had decided not
to assign a panel attorney to Mr. Dykes because the case did not involve a conflict arising
from the OPD's representation of a co-defendant.

THE COURT:     All right, so your request is to discharge the Public Defender's Office from both of these cases … --

MR. DYKES:     I, --

THE COURT:     -- is that right?

MR. DYKES:     -- I just don't wish him, no, no, I, I don't want to dischar, I, wanted a, a lawyer. I don't discharge him. I just don't wish him to speak for me. I don't wish him for speak with me cause I don't trust what comes out of his mouth.… I need a lawyer, but I don't want the Public Defender's Office.

*** 

THE COURT:     Right, but you don't have that choice ... that's your only choice, yourself or the Public Defender's Office ... You have to make a choice between those two options …

MR. DYKES:     I don't know what to do Your Honor. I ain't gonna lie. I, I don't know what to do. I, I would like somebody to represent me. I really would. I need somebody cause I'm gonna get attempt.[12] …

THE COURT:     All right, well I do not hear that you wish to discharge the Office of the Public Defender. You've said over and over again you want an attorney, that's the only attorney available to you. So your Motion

MR. DYKES:     Are you gonna do something for me then?

THE COURT:     -- to Discharge Counsel is denied.

Moments later, Mr. Dykes interrupted the court, stating: "I'll represent myself Your Honor,"

and, "I said I'll represent myself, I don't want him to talk for me."

---

[12] Presumably, Mr. Dykes meant that he would end up in contempt of court.

18

The court did not revisit the issue of discharge, but granted another postponement at Mr. Gordon's request, for the defense to prepare in light of the finding earlier that day that Mr. Dykes was competent to stand trial. Trial was scheduled for May 1-3, 2013.

*March 27, 2013 – Hearing on Motion to Fire Public Defender (Judge Nagle)*

On March 19, 2013, Mr. Dykes filed another Motion to Fire Public Defender, claiming that the OPD had fabricated evidence against him and lied to him repeatedly. In his motion, he stated that he "does not want the public defenders office [sic] to speak for him in any manner."`

On March 27, 2013, Mr. Dykes appeared in court on his Motion to Fire Public Defender. At the outset, his Assistant Public Defender, Mr. Gordon, informed the court that if Mr. Dykes discharged him, he would be discharging the entire OPD. Mr. Gordon also told the court, "I believe [Mr. Dykes] … wishes to discharge the entire office." Mr. Dykes explained that he was concerned about a lack of communication between himself and defense counsel, and complained about his experiences with the OPD in several prior cases. After an extended disquisition by Mr. Dykes, Mr. Gordon advised the court that "if he discharges counsel and the court finds no meritorious reason, as long as it's knowing, intelligent, voluntary on his part then that acts as a waiver of his right to counsel." The court gave Mr. Dykes the following advice:

THE COURT:     [W]hat I'm telling you is I'm not telling you you have to represent yourself. This is a choice that you are now explaining to me the reasons why you wish to represent yourself and not be represented by a competent, a very

19

competent trial attorney. That's not my choice that is your choice.

***

I think that you should have counsel, but you have the right to waive your right to counsel. And that's why we are here. And that's what I have to have a hearing for, and I have to make certain findings on the record if I determine that there is a meritorious reason why you should be able to discharge your attorney.…

So what I'm telling you is that you really ought to think long and hard about what you are doing here right now before we go any further.

Judge Nagle then granted Mr. Dykes' motion to discharge counsel, finding a "meritorious reason" to do so:

THE COURT: All right. Based on the Maryland Rules, Maryland Rule 4-215, which is Waiver of Counsel, and I'm looking at Section, Subsection (e) Discharge of Counsel Waiver, I find that there is a palpable and obvious distrust that the Defendant has with respect to the Office of the Public Defender and specific attorneys that have been assigned to him to date … And I find that that is clearly a meritorious reason for his request in his Motion to Fire the Public Defender, which essentially means Mr. Gordon and the Office of the Public Defender.…

I do find, again, if I, just to make, make it absolutely clear that there is a meritorious reason for the Defendant's request.…

I will advise Mr. Dykes, however, that as to his waiver that he is not going to be assigned other counsel in this matter. He's not gonna, to, going to be assigned by the Office of the Public Defender, which he effectively is discharging at this time. He's not gonna be assigned other counsel from this court. I believe that he

20

understands in his own fashion that he is waiving his right to have counsel in this matter, and I would advise Mr. Dykes and, and after I finish I'll ask you if you understand what I just said; okay. So just give me a moment. Essentially that he understands that he has a right to be represented by an attorney at every stage of these proceedings. He understands that.

Well I'm gonna ask him, do you understand that sir?

MR. DYKES:        Yes sir.

THE COURT:        Okay. Thank you.

You understand that an attorney could be of important help to you in determining whether or not there might defenses to the charges or circumstances and mitigation thereof, and in preparing for and representing you at the trial of the charges; do you understand that?

MR. DYKES:        Yes. I understand I would like an attorney. I, I do, I would like an attorney.

THE COURT:        Well sir, you have one standing to the right of you, but you know what, well I'm gonna finish what I'm doing.

In accordance with Rule 4-215(a)(1)-(4) & (b), the court then questioned Mr. Dykes to verify that he was aware of his right to counsel and was acting knowingly and voluntarily in discharging his Assistant Public Defender. The court then found that "the Defendant has made a knowing, intelligent, and voluntary waiver of his rights to have counsel. That he is making a free and voluntary election to ask the court to discharge his public defender, which the court is granting." The trial remained scheduled for May 1-3, 2013.

21

*Motion for Court-Appointed Counsel (Judge Turnbull)*

On April 16, 2013, Mr. Dykes filed a motion for court-appointed counsel.  In a letter to Mr. Dykes on April 25, Judge Turnbull responded, "I have no power to specially assign you a Public Defender or change the Public Defender currently assigned to your case.  As such, your Motion to Have Court Appointed Counsel is hereby, DENIED.  If you wish to have a new Public Defender assigned you must direct your request to one of the Circuit Court Supervisors at the Public Defender's Office."  It appears that Judge Turnbull may not have been aware that Mr. Dykes had recently discharged his Assistant Public Defender and was no longer represented by the OPD.

*May 1, 2013 – Motion for Appointed Counsel (Judge Souder)*

Mr. Dykes next appeared in court on his scheduled trial date.  Mr. Dykes renewed his request for court appointed counsel.  The court replied, "I do not have the authority to appoint an attorney for you."[13]  Mr. Dykes protested, and the following exchange took place:

| | |
|---|---|
| THE COURT: | Well the Office of the Public Defender was willing to represent you.  You have, -- |
| MR. DYKES: | No they weren't, Your Honor |
| THE COURT: | -- you have decided that you do not want that representation. |
| MR. DYKES: | They tricked me.  They lied to me.  They threatened me. How is that representing me? |

---

[13] Moments later, the court repeated, "You're saying you want this court to appoint you an attorney? … I do not have authority to do that."

22

| THE COURT: | Your choice is then to represent yourself. What you do not have is a right to an infinite number of lawyers to be appointed for you – |
|---|---|
| MR. DYKES: | I just want one that will represent me -- |
| THE COURT: | -- until you are satisfied. |

The court denied his request for counsel, and proceeded to other motions.

### C.     *Trial and Appeal*

Following the motions hearing on May 1, 2013, the court picked a jury and the trial proceeded with Mr. Dykes representing himself.[14]  After a two-day trial, he was convicted of first degree burglary and malicious destruction of property valued at less than $500.  He was found not guilty of theft of property valued between $1,000 and $10,000.  The third degree and fourth degree burglary charges were nolle prossed.

On May 2, 2013, the court sentenced Mr. Dykes to 20 years in prison for the first degree burglary conviction and 60 days imprisonment for the malicious destruction of property conviction, to run concurrent with the 20-year sentence.

Mr. Dykes appealed.  The Court of Special Appeals affirmed the convictions in an unreported opinion.  This Court granted his petition for a writ of certiorari to consider whether the trial court erred in failing to appoint counsel for Mr. Dykes and in stating that it lacked the authority to appoint counsel for Mr. Dykes, after finding a meritorious reason to discharge his Assistant Public Defender and the OPD.

---

[14] The trial concerned the Fischer case.  The charges in the second case were ultimately nolle prossed.

### III

### Discussion

Before this Court, Mr. Dykes asserts that the Circuit Court erred in three pre-trial interactions with him: (1) the March 27, 2013 hearing when the court found that he had a meritorious reason to discharge his Assistant Public Defender, but advised him that his only options were proceeding *pro se* or retaining his current Assistant Public Defender; (2) the April 25, 2013 written response of the administrative judge to Mr. Dykes' request for counsel in which it stated that the court had no power to specially assign an assistant public defender and directed him to the OPD for help; and (3) the May 1, 2013 hearing immediately before trial when the trial court told Mr. Dykes that it lacked authority to appoint counsel for him.

At the March 27, 2013 hearing, the Circuit Court was painstaking in its effort to follow the road map set out in Rule 4-215, at times reciting the language of the rule as it attempted to deal with a defendant who, as the transcripts of the many hearings in this case demonstrate, had difficulty restraining himself from interrupting the court and venting his frustrations. Early in the hearing, the Assistant Public Defender advised the court that he believed that Mr. Dykes wished to discharge the OPD altogether. He later elaborated that, if the court found that Mr. Dykes' reason for discharge was *not meritorious*, it would act as a waiver of counsel if the court found that Mr. Dykes did so knowingly and voluntarily. The court apparently accepted those two conclusions – that the OPD would be out of the case and

24

that a discharge would be equivalent to a waiver of counsel – despite the fact that it found the premise – a *non-meritorious* reason for discharge – to be lacking.[15]

The determination that Mr. Dykes had a meritorious reason for discharge and the fact that his request for new counsel was raised and repeated well before trial also distinguishes it from many prior cases. This was not a case in which the defendant attempted to manipulate the court on the eve of trial by asserting his right to counsel or withdrawing a waiver of counsel on the eve of trial. *See Jones v. State*, 403 Md. 267, 301-2, 941 A.2d 1082 (2008) (trial court did not abuse its discretion in denying request by defendant on day of trial to withdraw his prior waiver of counsel and to postpone the trial); *Fowlkes*, 311 Md. at 607 (defendant's request to discharge public defender for "unmeritorious" reason at beginning of trial was waiver of right to counsel).

The bottom line was that the court found that Mr. Dykes had a meritorious reason to discharge counsel almost six weeks before the trial date.[16] Mr. Dykes made repeated, unequivocal statements at that hearing that he wanted an attorney and later reiterated that desire to other judges of the court both in writing and in person. Unfortunately, the concepts

---

[15] Apparently neither the Assistant Public Defender nor the Assistant State's Attorney brought this discrepancy to the attention of the court.

[16] The Circuit Court identified as a meritorious reason for the discharge of counsel Mr. Dykes' distrust of the OPD and the specific attorneys assigned to him. The State has not contested the merits of that determination, although it argued before us that, on the facts of this case, the Circuit Court would have acted within its discretion if it had found that Mr. Dykes' reasons for discharge were *not meritorious*. We also note that, before us, Mr. Dykes' appellate counsel conceded that distrust of the OPD would not be *per se* a meritorious reason for discharge.

of discharge and waiver were nevertheless treated as equivalent, and it is not entirely clear that the judges who dealt with the later requests were aware that the earlier discharge of counsel was for a meritorious reason. Mr. Dykes was therefore addressed as someone who had waived his right to counsel, not as someone who had discharged counsel for a meritorious reason, remained an indigent defendant,[17] and was therefore entitled to appointment of counsel.[18]

One source of confusion here may be that the rule does not explicitly address the situation of an indigent defendant entitled to appointed counsel. Under Rule 4-215(e) when a defendant has a meritorious reason to discharge counsel, the court "must grant the request and, if necessary, give the defendant an opportunity to retain new counsel." *Williams*, 321 Md. at 273. For a defendant who can afford a private attorney, this generally means the time to find and hire a new attorney; thus, the trial court has authority under Rule 4-215(e) to

---

[17] There does not appear to be any dispute that Mr. Dykes continued to qualify for appointment of counsel at the time his Assistant Public Defender was discharged.

[18] Some years ago former Chief Judge Bell, while a member of the Court of Special Appeals, described just this situation:

> In the instant case, appellant was financially and otherwise entitled to have counsel appointed to represent him, the Public Defender's office having previously so determined. ... Since appellant was financially and otherwise entitled to have counsel appointed to assist him, a finding by the court that the request [for discharge of counsel] was meritorious would impose upon the court the obligation of appointing counsel to replace discharged counsel, the Public Defender's office having declined to do so.

*Argabright v. State*, 75 Md. App. 442, 460-61, 541 A.2d 1017 (1988).

26

continue the case for that purpose. For an indigent defendant, however, "an opportunity to retain counsel" is meaningless if the OPD declines to provide an attorney and the court believes it has no authority to appoint counsel. This would contradict the purpose of Rule 4-215(e) described above: "to protect that most fundamental right to the effective assistance of counsel, which is basic to our adversary system of criminal justice, and which is guaranteed by the federal and Maryland constitutions to every defendant in all criminal prosecutions." *Williams*, 321 Md. at 272.

Under these circumstances, having found a meritorious reason for the discharge of Mr. Dykes' current assistant public defender, the court should have referred Mr. Dykes to the OPD explicitly for the assignment of a new assistant public defender or panel attorney or, if it believed that to be fruitless,[19] acted on its own authority to offer to appoint counsel for him under its inherent authority.[20]

On remand, the Circuit Court should appoint counsel for Mr. Dykes[21] (unless Mr. Dykes affirmatively waives counsel and the court finds, after the appropriate inquiry under Rule 4-215, that he does so knowingly and voluntarily), and set the case for retrial. Should

---

[19] At the March 27, 2013, hearing, the court appeared to believe that it was discharging the entire OPD – perhaps because the Assistant Public Defender had indicated that to be Mr. Dykes' intent.

[20] If the court had determined that Mr. Dykes did not have a meritorious reason to discharge his Assistant Public Defender, it would have had no obligation to exercise its inherent authority to appoint counsel or even to direct him back to the OPD to seek substitute counsel.

[21] The Circuit Court need not exercise its inherent power to appoint counsel if the OPD is willing to appoint another attorney to represent Mr. Dykes on remand.

27

Mr. Dykes again seek to discharge counsel, the Circuit Court would, of course, have to assess anew the merits of whatever reason is given and would not be bound by its prior determination of good cause in this case.

**IV**

**Conclusion**

As the many appellate decisions construing Rule 4-215 demonstrate, it is not unusual for a defendant represented by appointed counsel to seek a substitute. Perhaps because of a human tendency to equate price with value, assistant public defenders sometimes do not receive the credit they deserve from those they most directly serve – their clients. In most instances there is no good cause for a court to allow a discharge and appoint new counsel, and the defendant must decide whether to continue with current counsel or to proceed *pro se*.

This is the rare case in which the court found good cause to discharge the assistant public defender assigned to Mr. Dykes. That determination, coupled with Mr. Dykes' continued assertion of his right to counsel, required the court to take some action to obtain counsel for him, perhaps exercising its inherent authority to appoint counsel.

Accordingly, we hold:

1.      When an indigent defendant asks to discharge appointed counsel and the trial court determines, after conducting the inquiry required by Rule 4-215(e), that the defendant has a meritorious reason to discharge counsel, the decision to discharge counsel is not itself a waiver of appointed counsel.

28

2.	If an indigent defendant has discharged appointed counsel for a meritorious reason and the Office of the Public Defender is unable or unwilling to provide new counsel, the trial court may appoint counsel for that defendant pursuant to its inherent authority.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND REMAND TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY BALTIMORE COUNTY.**

Circuit Court for Baltimore County
Case No. 03-K-11-006626

Argued: April 8, 2015

IN THE COURT OF APPEALS

OF MARYLAND

No. 70

September Term, 2014

_____

ALEXANDER DYKES

v.

STATE OF MARYLAND

_____

Barbera, C.J.
*Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

_____

Concurring Opinion by Watts, J.

_____

Filed: August 27, 2015

*Harrell, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

Respectfully, I concur. I join Judge McDonald's excellent opinion, and write separately only to observe that our holding in this case implies a responsibility that is not required by Maryland Rule 4-215(e)—namely, if an indigent defendant discharges counsel for a meritorious reason, a circuit court must upon request consider whether to exercise its authority to appoint new counsel. See Maj. Slip Op. at 27. From my perspective, this case illustrates the desirability that Maryland Rule 4-215(e) be reviewed by the Standing Committee on Rules of Practice and Procedure. Seven years ago, Judge Moylan aptly observed: "For a judge to traverse [Maryland] Rule 4-215 is to walk through a minefield. A miracle might bring one across unscathed. For mere mortals, the course will seldom be survived." Garner v. State, 183 Md. App. 122, 127, 960 A.2d 649, 651 (2008), aff'd, 414 Md. 372, 995 A.2d 694 (2010). Regrettably, despite having been amended three times since then, Maryland Rule 4-215 remains a minefield. Indeed, Judge McDonald acknowledges that Maryland Rule 4-215(e)'s silence on "the situation of an indigent defendant entitled to appointed counsel" could be a "source of confusion[.]" Maj. Slip Op. at 26. Given that our holding in this case appears to impose upon circuit courts a responsibility that is not addressed in Maryland Rule 4-215(e), I would refer to the Rules Committee the issue of amending Maryland Rule 4-215(e) to clarify what a circuit court must do after determining whether or not there is a meritorious reason for discharge of counsel.

For the above reasons, respectfully, I concur.