<u>Diandre Goodrich v. State of Maryland</u>, No. 8, September Term, 2025

**SIXTH AMENDMENT – ARTICLE 21 OF MARYLAND DECLARATION OF RIGHTS – MARYLAND RULE 4-215(e) – RIGHT TO COUNSEL – RIGHT TO SELF-REPRESENTATION – REQUEST TO DISCHARGE COUNSEL – INQUIRY**
Supreme Court of Maryland held that where trial court has been advised that defendant who is represented by counsel desires self-representation, court is required under <u>Snead v. State</u>, 286 Md. 122, 406 A.2d 98 (1979), to conduct inquiry to determine whether defendant truly wants to assert right to self-representation, *i.e.*, whether defendant clearly and unequivocally asserts right to self-representation, and under Maryland Rule 4-215(e), must permit defendant to explain reasons for request to discharge counsel.

Supreme Court held that where, in response to reasonable inquiry by court, defendant does not express desire that court could reasonably conclude is request for self-representation or to discharge counsel, court does not have obligation under case law or Maryland Rule 4-215(e) to question defendant further to determine whether defendant wants to invoke right to self-representation.

Supreme Court concluded that, under circumstances of case, where court advised defendant that it had been informed that defendant desired self-representation and conducted reasonable inquiry giving defendant opportunity to assert right to self-representation and defendant responded that he would like attorney and did not express desire that court could reasonably conclude was desire for self-representation or to discharge counsel, court's inquiry complied with case law governing assertion of right to self-representation and Maryland Rule 4-215(e) and court was not required to question defendant further.

IN THE SUPREME COURT

OF MARYLAND

No. 8

September Term, 2025

_____

DIANDRE GOODRICH

v.

STATE OF MARYLAND

_____

Fader, C.J.
Watts
Booth
Biran
Gould
Eaves
Killough,

JJ.

_____

Opinion by Watts, J.

_____

Filed: October 24, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

The Sixth Amendment to the Constitution of the United States provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." In <u>Faretta v. California</u>, 422 U.S. 806, 817-19 (1975), the Supreme Court of the United States held that implicit in a defendant's Sixth Amendment right to counsel is a defendant's "right to self-representation—to make one's own defense personally[.]" Article 21 of the Maryland Declaration of Rights also guarantees the right to counsel in a criminal case. "Maryland Rule 4-215 implements a defendant's right to waive counsel, and incorporates safeguards to ensure that the defendant is acting knowingly and voluntarily in making that choice." <u>Dykes v. State</u>, 444 Md. 642, 651, 121 A.3d 113, 118 (2015). Courts, however, "'indulge every reasonable presumption against [] waiver.'" <u>Id.</u> at 648, 121 A.3d at 116 (quoting <u>Parren v. State</u>, 309 Md. 260, 263, 523 A.2d 597, 598 (1987)).

This case presents an unfortunately all too common dilemma in which a trial court is faced with a defendant who, while detained in connection with a criminal case, opposes a request for postponement of a trial date because the postponement will result in a longer period of pre-trial detention. In this case, we are asked to determine whether, in ruling on a joint motion to continue a trial date, a circuit court administrative judge[1] denied a request

[1]Pursuant to Maryland Rule 16-105, the Chief Justice of the Supreme Court designates a County Administrative Judge for each circuit court to be responsible for the administration of that circuit court. Maryland Rule 4-271(a) provides that, with respect to a trial date of a criminal case in the circuit court, "[o]n motion of a party, or on the court's initiative, and for good cause shown, the county administrative judge or that judge's designee may grant a change of a circuit court trial date." Thereafter, "[i]f a circuit court trial date is changed, any subsequent changes of the trial date may be made only by the

by Diandre Goodrich, Petitioner, for self-representation in violation of his constitutional rights and Maryland Rule 4-215(e). In doing so, we must determine whether under the circumstances of the case, where the administrative judge conducted an inquiry of Mr. Goodrich concerning information conveyed by his counsel indicating that he wanted to represent himself, and Mr. Goodrich responded that he wanted an attorney and did not want the trial date postponed, the administrative judge was required under Maryland Rule 4-215(e) or case law concerning the constitutional right to self-representation to engage in additional questioning of Mr. Goodrich to determine whether he truly wanted an attorney or wanted to represent himself at trial.

In the Circuit Court for Montgomery County, Mr. Goodrich was charged with attempted first-degree murder and related offenses. Prior to trial, the parties filed a joint motion to continue the trial date. The defense request for postponement was based on Mr. Goodrich's counsel's resignation from the Office of the Public Defender and the case not yet being reassigned to another member of the office. The State, Respondent, requested a postponement because, in light of Mr. Goodrich's counsel's resignation, the prosecutor assigned to handle the case had not issued required subpoenas to out-of-state witnesses and, after reviewing discovery, believed that the trial would last longer than the four days for which it had been set. During a status hearing at which the joint motion was before the trial judge, Mr. Goodrich was represented by newly assigned counsel who advised the court

county administrative judge or that judge's designee for good cause shown." Md. R. 4-271(a).

- 2 -

that Mr. Goodrich was saying he wanted to represent himself and keep the already scheduled trial date.  The trial judge referred the matter to the administrative judge.

The administrative judge informed Mr. Goodrich of his attorney's statement regarding him wanting to represent himself and told Mr. Goodrich that he would be happy to hear from him.  In response, Mr. Goodrich advised that he did not want to have the case postponed and that he wanted an attorney.  Mr. Goodrich stated: "I'm ready to prove my case, and I do -- I would like an attorney, but I don't want to waive my speedy trial right. I need my day in court, sir."  The administrative judge advised Mr. Goodrich that his speedy trial right was not being waived.  After that, Mr. Goodrich did not make a request to discharge counsel or to represent himself nor did Mr. Goodrich indicate that he had asked his attorney to convey such a request to the court.  Mr. Goodrich explained, among other things, that he was incarcerated and did not want his trial date pushed back.  Mr. Goodrich stated: "I'm willing to risk whatever it takes if I can just keep my trial date where it's at. It's killing me to be in jail for something that I didn't do."  After hearing from Mr. Goodrich, the administrative judge postponed the trial date[2] and did not make a ruling under Maryland Rule 4-215(e), which requires that the defendant have made a request to discharge counsel.

_____

[2]At the status hearing in front of the trial judge, before the case was referred to the administrative judge, the trial judge discussed new trial dates with counsel and they arrived at March 20, 2023, as the first date on which the court and counsel were available.  In granting the joint motion to continue, the administrative judge postponed the trial date to March 20, 2023, the date that the parties had selected with the trial judge.

After a trial by jury at which he was represented by counsel, Mr. Goodrich was found guilty of attempted second-degree murder, armed robbery, and use of a firearm in the commission of a felony or crime of violence and sentenced to imprisonment. In an unreported opinion issued on December 5, 2024, the Appellate Court of Maryland affirmed the conviction. See Goodrich v. State, No. 1050, Sep. Term, 2023, 2024 WL 4986198, at *1 (Md. App. Ct. Dec. 5, 2024).

In this Court, Mr. Goodrich contends that before the administrative judge he made a request to represent himself and the judge denied the request in violation of his constitutional rights and Maryland Rule 4-215. According to Mr. Goodrich, his responses to the administrative judge's inquiry required the judge to ask additional questions of him to ascertain whether he truly wanted to represent himself, and to make a ruling under Maryland Rule 4-215(e) as to whether a request to discharge counsel was meritorious.

The State responds that a defendant must unequivocally assert the right to self-representation for the court to act on the request. The State's position is that once Mr. Goodrich advised that he wanted an attorney, the administrative judge was not obligated to continue an inquiry into whether he wanted to represent himself or to make a ruling as to whether a request to discharge counsel was meritorious or not because no such request had been made. The State contends that, to the extent Mr. Goodrich's responses could be perceived as a request for self-representation, the request was contingent on the denial of the joint postponement request and not a clear and unequivocal one that triggered the protection of Mr. Goodrich's constitutional right to self-representation or further inquiry under Maryland Rule 4-215(e).

- 4 -

We hold that, under the circumstances of this case, the circuit court complied with the requirements set forth in case law concerning the constitutional right to self-representation and Maryland Rule 4-215(e). Where a trial court has been advised by defense counsel that a defendant wants to represent himself at trial, the court is required under case law concerning the constitutional right to self-representation to conduct an inquiry to determine whether the defendant clearly and unequivocally invoked the right to self-representation and under Maryland Rule 4-215(e) to permit the defendant to explain the reasons for the request to discharge counsel.[3] We conclude that where, in response to a court's reasonable inquiry, a defendant does not express a desire that the court could reasonably conclude is a request for self-representation or to discharge counsel, the court does not have an obligation under case law or Maryland Rule 4-215(e) to question the defendant further to determine whether the defendant wants to invoke the right to self-representation.

Our holding stems from the United States Supreme Court's holding in Faretta that, "[w]hen the defendant [] indicates a desire to defend Pro se, the court must, by appropriate inquiry, determine whether he 'truly wants to do so[,]'" Snead v. State, 286 Md. 122, 127-28, 406 A.2d 98, 101 (1979) (quoting Faretta, 422 U.S. at 817), and our holding in Snead,

---

[3]A request for self-representation and a request to discharge counsel are not necessarily synonymous. A defendant may seek to discharge counsel to obtain representation by a different attorney and have no desire for self-representation. On the other hand, a defendant may assert the right to self-representation and want to discharge counsel and have no desire to obtain new counsel. In this case, our holding concerning the assertion of the right to self-representation and compliance with Maryland Rule 4-215(e) pertains to the latter circumstance.

id. at 128-30, 406 A.2d at 101-02, in which we adopted a two-part test, incorporating an earlier version of Maryland Rule 4-215(e), for determining compliance with the constitutional right to self-representation, under which a court must ascertain that a defendant clearly and unequivocally invoked the right to self-representation and if the right is clearly and unambiguously invoked, the court must determine whether there is a knowing and voluntary waiver of the right to counsel.

In particular, our holding is based on the well-established principle, set forth first in Maryland case law in Snead, id. at 127, 406 A.2d at 101, that a statement by a defendant or defendant's counsel from which it can reasonably be concluded that the defendant has expressed a desire for self-representation triggers an inquiry of the defendant to determine if the defendant truly wants to exercise the right. The conclusion we reach is also consistent with the mandates of the three-step process set forth in the plain language of Maryland Rule 4-215(e), as well as case law interpreting the Rule, which provides that if a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request, carefully consider the defendant's request, and make a determination as to whether the request is meritorious or not and take action in accordance with its determination. See, e.g., Pinkney v. State, 427 Md. 77, 93-94, 46 A.3d 413, 423 (2012).

In this case, where, in response to the court's inquiry, Mr. Goodrich advised the court that he wanted an attorney and did not reasonably apprise the court of a desire for self-representation or to discharge counsel, neither the Supreme Court's holding in Faretta nor our holding in Snead or the provisions of Maryland Rule 4-215(e) required the court to

question him further. Under the circumstances of the case, the court's inquiry was reasonable and complied with case law governing assertion of the right to self-representation and Maryland Rule 4-215(e). For the reasons explained below, we affirm the judgment of the Appellate Court.

## BACKGROUND

In February 2022, in the circuit court, the State filed an indictment charging Mr. Goodrich with attempted first-degree murder, attempted second-degree murder, armed robbery, and use of a firearm in the commission of a felony or violent crime. Trial was scheduled for July 5, 2022.

On June 7, 2022, the State, Mr. Goodrich, and Mr. Goodrich's counsel appeared before the Honorable David W. Lease, the trial judge, for a status hearing. At that time, both counsel requested a postponement of the July 5, 2022 trial date. The parties advised the circuit court that Mr. Goodrich's counsel's last day with the Office of the Public Defender was later that week, and that no new attorney had been assigned to the case yet. According to Mr. Goodrich's counsel, new counsel would be assigned within a few weeks but would not "be prepared to go forward on July 5th." Mr. Goodrich's counsel also advised that the State was seeking "to postpone in either event" because it had "conflicts for the scheduled trial date[,]" and that he wanted to put this on the record for purposes of assigning responsibility for the postponement request. The prosecutor told the court that because new defense counsel had not been assigned, the State had been "holding off" on issuing subpoenas to out-of-state witnesses until the status hearing due to the time and money it takes and that she had been planning to be out of town on the scheduled trial date

- 7 -

but was holding off on purchasing airline tickets to see if the trial would go forward. Mr. Goodrich's counsel stated that Mr. Goodrich "very much want[ed] a speedy trial" and did "not want the trial date to be postponed." Neither Mr. Goodrich, who was present at the hearing, nor his counsel expressed a desire by Mr. Goodrich to discharge counsel or to represent himself.

The circuit court stated that its understanding was that the case could not "go forward on the 5th[,]" but that it could not reschedule the trial date that day because Mr. Goodrich's replacement counsel was not yet assigned to the case and might not be available on a date that would be selected. So, the circuit court advised that, on June 28, 2022, it would reschedule the motions hearing and the trial date. The circuit court confirmed that the State did not need to issue trial subpoenas for the July 5th date.

The State informed the circuit court that, due to the "voluminous nature of all of the records involved," it anticipated that the case would take five or more days to try, instead of the four days that had originally been scheduled, and the court responded that this was another reason to continue the trial date. The circuit court directed counsel to file a written joint motion to postpone.

The next day, June 8, 2022, the parties filed a "Joint Motion to Continue," requesting a continuance of the July 5, 2022 trial date. In the joint motion, the parties advised that Mr. Goodrich's counsel was leaving the Office of the Public Defender, the case had not been reassigned to another member of the Office of the Public Defender, and the hope was that the case would be "reassigned within the next several weeks." The parties also advised that, in light of Mr. Goodrich's counsel's resignation, the State did not issue subpoenas for

out-of-state witnesses as it would not be possible "for new counsel to be prepared to try th[e] case with such minimal preparation time." The parties advised that the case involved voluminous discovery, and that after having "received thousands of pages of medical records," the State believed trial would take five or more days to complete, not the four days that it was set for. The parties stated that, "[g]iven the volume of discovery and complexities of the case and no new assigned defense attorney, the parties are not prepared for a trial of this magnitude and severity by July 5, 2022."

On June 28, 2022, the State, Mr. Goodrich's newly appointed attorney, and Mr. Goodrich appeared before the trial judge for a status hearing at which the joint motion to continue was considered. Mr. Goodrich's counsel advised that he had just been assigned the case, that he had not yet looked at discovery, and that he needed more time to prepare for trial. Defense counsel advised the circuit court that Mr. Goodrich was "very much opposed to the case being continued[,]" and that Mr. Goodrich felt the postponement of the case was out of his hands, given that the dates of November 2nd for motions and March 20th for a trial date had already been "picked."[4] Mr. Goodrich's counsel stated that Mr. Goodrich was "very upset" and that he wanted to make sure that the record was clear that Mr. Goodrich was "very unhappy about any continuance." The following exchange occurred:

THE COURT: Okay.

[DEFENSE COUNSEL]: That's what I'm saying, you're opposed to it.

---

[4]Defense counsel and the State had apparently agreed upon the dates of November 2nd for the motions hearing and March 20th as the trial date, but the current trial date had not yet been postponed.

- 9 -

THE DEFENDANT: I'm opposed to it.

After that, defense counsel stated that "Mr. Goodrich is indicating that, that he may, Mr. Goodrich is saying that he would rather represent himself and keep the same trial date." The prosecutor replied that the State was unavailable. The circuit court and counsel discussed potential trial dates before March 2023, but were unable to find a mutually agreeable trial date prior to March 20, 2023. After the discussion about available trial dates, the trial judge sent the parties to the Honorable James Bonifant, the administrative judge.

When the case was called, the administrative judge explained that the joint motion to continue the July 5, 2022 trial date could not be granted without his consent. The judge asked when defense counsel had been assigned to the case and counsel responded that he had been assigned to the case earlier that week and realized that he was assigned the day of the status hearing. The administrative judge advised Mr. Goodrich as follows:

> Well, Mr. Goodrich, you are facing significant charges in this case, sir. I'm worried about making sure that you present the best possible defense that you can. I am informed that you are not pleased about the postponement and I'm not surprised by that at all. So that's understandable.
>     I've also been informed that you made the statement that you want to represent yourself. That is a big decision, sir, with what you're facing. You are facing life in prison. And, you know, an attorney can be extremely helpful to you, not only representing you during the trial but making sure you understand all of the evidence that is being presented against you.
>     I'm now informed that there are going to be expert witnesses brought that will be called by the State to testify. That's important stuff. You need help, sir. [Defense counsel] is ready, willing, and I can tell you able to represent you. So if you want to say something to me, sir, I am happy to hear it from you.

Judge Bonifant continued: "I want you to have the best possible defense that you can get. And, to me, that sounds like we're going to have to postpone this case to March. But, if you want to tell me that you're not happy about that, I'm willing to listen to you."

Next, Mr. Goodrich spoke, and the following colloquy occurred:

THE DEFENDANT: I do not want the case postponed. I have been sitting in jail for a while. Since January 14th. I'm innocent of these charges, as you know. As you said, I am presumed innocent.

THE COURT: Yes, sir.

THE DEFENDANT: I would like my day to prove that I'm innocent. And I mean, I'm being very careful of what I say here, obviously what you said, but, basically, I need to get home to my family. I'm innocent of these charges, and I can't wait to prove that I'm innocent, but I thought the state already agreed upon what date it was going to be tried.

I thought we already knew what the trial date was going to be. I had no -- I didn't even foresee [prior defense counsel] being removed off my case at the last minute. It seems as though he had a different interest or something else was at hand. I can't control that. He left on the 10th. I've been trying to call my current attorney . . . all weekend, trying to tell him I have trial questions prepared. I have the index. I've taken a lot of time to prepare and look at my case.

I'm ready to prove my case, and I do -- I would like an attorney, but I don't want to waive my speedy trial. I need my day in court, sir.

THE COURT: But what we're doing here, sir, you are not waiving your right to a speedy trial. So please be clear about that.

THE DEFENDANT: I would like my day in court, and this is very psychologically damaging for me to see my court date that I've been waiting on for months several months be pushed back several more months. I'm incarcerated, Your Honor.

In response, the administrative judge told Mr. Goodrich that, given the circumstances, a continuance was "unavoidable." The circuit court stated that the Office of the Public Defender was understaffed at that time, with only 24 attorneys instead of 35,

- 11 -

so the office was "spread thin." The circuit court also advised that there were over 1,000 open criminal matters in the court, approximately 330 more cases than the court had at the beginning of the COVID-19 pandemic. The circuit court asked Mr. Goodrich what he wanted to tell the court, and the following exchange occurred:

> THE DEFENDANT: Your Honor, I'm willing to risk whatever it takes if I can just keep my trial date where it's at. It's killing me to be in jail for something that I didn't do. If I can just prove my innocence, trust me. There's a lot of things wrong with this case. Namely, the fact that I'm innocent, and that can be proven from various angles.

> THE COURT: Okay. Well, sir, I want you to have an attorney, given what you're facing. You are very confident about that. And [defense counsel] will appreciate that as he represents you. But I'm going to postpone this trial date, sir.

The circuit court granted the postponement and scheduled trial for March 20, 2023. On that date, trial began, and Mr. Goodrich was represented by the Office of the Public Defender. Mr. Goodrich did not make a request to represent himself. The jury found Mr. Goodrich guilty of attempted second-degree murder, armed robbery, and use of a firearm in the commission of a crime of violence. The circuit court sentenced Mr. Goodrich to a total of thirty years of incarceration.

**Opinion of the Appellate Court of Maryland**

On December 5, 2024, the Appellate Court of Maryland affirmed the circuit court's judgment. See Goodrich, 2024 WL 4986198, at *1, *10. The Appellate Court concluded that Mr. Goodrich "did not express a present intent to discharge counsel," and as such, the circuit court was not required to conduct further inquiry under Maryland Rule 4-215(e) than it already had when it provided Mr. Goodrich "with a forum to discuss the issue and

- 12 -

specify his request." Id. at *4.[5] The Appellate Court explained that, once defense counsel stated that Mr. Goodrich would rather represent himself and keep the same trial date, the circuit court complied with the first step required under Maryland Rule 4-215(e) by having Mr. Goodrich discuss his request and "provided more than cursory consideration" of his reasons. Id. Upon examination and Mr. Goodrich's clarification, "it became clear that [he] did not have a present wish to discharge his counsel" and instead "he repeatedly indicated his objection was to a postponement of his trial date; self-representation was simply a means of potentially achieving that goal." Id.

The Appellate Court concluded that Mr. Goodrich's "express[] goal was to avoid a postponement of his trial date." Id. The Appellate Court stated that, "[n]otably, once the continuance was granted, [Mr. Goodrich] acted in accord with his words that he did want to be represented by counsel, i.e., he did not indicate dissatisfaction with or a desire to discharge his attorney, nor a desire to represent himself." Id. The Appellate Court concluded that the circuit court "acted within its discretion in making the determination that the request was an opposition to the continuance and ruled accordingly." Id.

### Petition for a Writ of *Certiorari*

On January 22, 2025, Mr. Goodrich petitioned for a writ of *certiorari*, raising the

---

[5]In the Appellate Court, Mr. Goodrich raised additional issues, concerning whether the circuit court erred or abused its discretion in admitting body worn camera footage and permitting the State to question Mr. Goodrich regarding the testimony of other witnesses, and whether plain error review should be exercised regarding the circuit court's control of closing arguments. See Goodrich, 2024 WL 4986198, at *1. The Appellate Court affirmed the judgment of the circuit court with respect to the issues, see id. at *1, *7-10, and they are not before this Court.

following issue:

> Did the lower court err in denying Petitioner's request for self-representation in violation of his constitutional rights and Maryland Rule 4-215?

On March 21, 2025, we granted the petition. See Goodrich v. State, 490 Md. 120, 333 A.3d 570 (2025).

## DISCUSSION

### A. Standard of Review

"This Court's 'interpretation of the Maryland Rules is a question of law; as such, we review a trial court's determinations on matters of interpretation without deference.'" State v. Taylor, 431 Md. 615, 630, 66 A.3d 698, 707 (2013) (quoting Pinkney, 427 Md. at 88, 46 A.3d at 419). "To determine if the trial court properly complied with Rule 4-215(e), we review its ruling *de novo*." State v. Weddington, 457 Md. 589, 598-99, 179 A.3d 1028, 1034 (2018) (citation omitted). "In reviewing a possible violation of a constitutional right, this Court conducts its own independent constitutional analysis" and "perform[s] a *de novo* constitutional appraisal in light of the particular facts of the case at hand[.]" State v. Davis, 415 Md. 22, 29, 997 A.2d 780, 784 (2010) (citation modified).

### B. The Constitutional Right to Self-Representation

At the start, we observe that this matter involves not only a question of the circuit court's compliance with Maryland Rule 4-215(e), but also a question of the court's compliance with case law governing assertion of the constitutional right to self-representation. We, therefore, begin our discussion with a review of case law of the

- 14 -

Supreme Court of the United States concerning the constitutional right to self-representation and our case law concerning assertion of the right.

The Supreme Court of the United States has stated in no uncertain terms that "[t]he right to the assistance of counsel guaranteed by the Sixth and Fourteenth Amendments is indispensable to the fair administration of our adversarial system of criminal justice." Maine v. Moulton, 474 U.S. 159, 168 (1985) (footnote omitted). In Faretta, 422 U.S. at 817, 819, the Supreme Court of the United States held that implicit in a defendant's Sixth Amendment right to counsel is the right to self-representation. The Supreme Court explained that "[t]he Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." Id. at 819. The Supreme Court stated that, "[a]lthough not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment." Id. (footnote omitted). The Supreme Court observed that "[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." Id. at 834. The Supreme Court explained, however, that "forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." Id. at 817. The Court stated:

> The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage.

Id. at 834.

In Faretta, id. at 807, the defendant had been charged with grand theft and, before the scheduled trial date, requested that he be permitted to represent himself at trial. Questioning by the trial court uncovered that the defendant had previously represented himself in a criminal case and that he did not want to be represented by a public defender because he believed the office's case load was too heavy. See id. The court initially granted the request. See id. at 808. Later, prior to trial, after questioning the defendant about his knowledge of a hearsay rule and law concerning challenging potential jurors, the trial court reversed the decision and ruled that the defendant had no constitutional right to conduct his own defense. See id. at 808-09. The trial court appointed the public defender to represent the defendant. See id. at 810. After a trial by jury, the defendant was found guilty and sentenced to imprisonment. See id. at 811.

In reversing the conviction, the Supreme Court explained that the right to self-representation had been protected by statute from the beginning of our nation,[6] and that, with few exceptions, each of the several states provide a defendant the right to self-representation and "many state courts have expressed the view that the right is also supported by the Constitution of the United States." Id. at 812-14 (citation modified). Citing Adams v. United States ex rel. McCann, 317 U.S. 269 (1942),[7] the Supreme Court

---

[6]The Supreme Court pointed out that Section 35 of the Judiciary Act of 1789, 1 Stat. 73, 92, enacted by the First Congress prior to the Sixth Amendment being proposed, provided that "'in all the courts of the United States, the parties may plead and manage their own causes personally or by the assistance of such counsel[,]'" and that right is codified in 28 U.S.C. 1654. Faretta, 422 U.S. at 812-13.

[7]In Adams, 317 U.S. at 275, the Supreme Court held that "an accused, in the exercise of a free and intelligent choice, and with the considered approval of the court, may waive

stated that it had more than once expressed the same view.  See Faretta, 422 U.S. at 814. The Supreme Court explained that the Sixth Amendment does not just provide that a defense shall be made for the accused; "it grants to the accused personally the right to make his defense."  Id. at 819.

In Snead, 286 Md. at 128, 131, 406 A.2d at 101, 103, adopting the holding of the Supreme Court of the United States in Faretta that a defendant has a right to self-representation under the Sixth Amendment, we set forth a two-part test for determining compliance with the constitutional right.  We explained that, "[a]lthough Faretta held that self-representation was an independent constitutional right in criminal prosecutions, it left unresolved certain procedural matters[.]"  Id. at 124, 406 A.2d at 99 (footnote omitted). We observed that one of the procedural problems to be determined was how the right to self-representation must be asserted.  See id. at 127, 406 A.2d at 101.  Particularly, the Supreme Court had given no guidelines concerning the minimum declaration sufficient to alert a court to the assertion of the right.  See id. at 127, 406 A.2d at 101.  We held that "any statement by the defendant from which the court could reasonably conclude that the defendant desired self-representation would be sufficient."  Id. at 127, 406 A.2d at 101.

In Snead, id. at 125, 406 A.2d at 100, on the day of trial, during a discussion with the trial court, the defendant expressed dissatisfaction with the public defender he had been assigned, Mr. Groton, and requested a continuance so that his family could secure another

trial by jury, and so likewise may he competently and intelligently waive his Constitutional right to assistance of counsel."  The Supreme Court recognized that the Sixth Amendment right to counsel implicitly encompasses "the correlative right to dispense with a lawyer's help[.]"  Id. at 279.

attorney for him. The trial court denied the defendant's request. See id. at 125-26, 406 A.2d at 100. In response, the defendant stated, "I don't want Mr. Groton[,]" to which the trial court replied, "You have got Mr. Groton." Id. at 126, 406 A.2d at 100. Next, the following exchange occurred:

> THE DEFENDANT: He told me every time he come to see me, he tell me I am guilty before I come in the courtroom. Why should I have a man he feels that way, before I come into the courtroom.
>
> THE COURT: Make your mind up Mr. Groton is going to represent you.
>
> THE DEFENDANT: I can't get time for my people to get me no attorney?
>
> THE COURT: No, sir.
>
> THE DEFENDANT: I don't want no attorney then.

Id. at 126, 406 A.2d at 100.

Without conducting any inquiry of the defendant concerning the desire for self-representation, the court ruled that Mr. Groton would remain the defendant's attorney. See id. at 126, 406 A.2d at 100. The Appellate Court affirmed the defendant's conviction, holding that his constitutional right to self-representation had not been violated, that the defendant had not expressly stated a desire to represent himself, and that his statements regarding not wanting an attorney were "vague and petulant utterances[.]" Id. at 127, 406 A.2d at 100. We disagreed. See id. at 131, 406 A.2d at 103.

We held that the defendant's statement, "I don't want no attorney then," was a declaration sufficient to mandate the trial court's inquiry into whether the defendant actually wanted to represent himself, *i.e.*, a statement from which the court could reasonably have concluded that the defendant desired self-representation. Id. at 127, 131,

406 A.2d at 101, 103. We explained that, where a defendant indicates a desire to proceed self-represented, the court must determine whether he "'truly wants to do so[,]'" and that the inquiry has two phases. Id. at 127-28, 406 A.2d at 101 (quoting Faretta, 422 U.S. at 817). "First, the court should ascertain whether the defendant 'clearly and unequivocally' wants to defend himself." Id. at 128, 406 A.2d at 101. We stated that, "[i]f the defendant makes known to the court, admitting of no doubt or misunderstanding, that he desires to represent himself, the right to do so has been properly asserted." Id. at 128, 406 A.2d at 101.

Once the defendant has clearly and unequivocally stated a desire to proceed *pro se*, the second phase of the inquiry is triggered. See id. at 128, 131, 406 A.2d at 101, 103. In the second phase of the inquiry, in order to represent himself, the defendant must knowingly and intelligently relinquish the traditional benefits associated with the right to counsel, *i.e.*, waive the right to counsel. See id. at 128, 406 A.2d at 101. We explained that then-existing Rule 723 of the Maryland Rules of Procedure implemented the constitutional mandates for waiver of counsel and that its provisions were mandatory. See id. at 130, 406 A.2d at 102.[8] We stated that section c of Rule 723 "is invoked when a

---

[8]At the time that Snead was decided, Rule 723, a prior version of Maryland Rule 4-215, provided in section c:

> When a defendant indicates a desire or inclination to waive counsel, the court may not accept the waiver until it determines, after appropriate questioning on the record in open court, that the defendant possesses the intelligence and capacity to appreciate the consequences of his decision, and fully comprehends:

defendant has properly asserted the right to defend Pro se and governs phase two of the inquiry required to determine whether a defendant 'truly' desires to manage his own defense."  Id. at 130, 406 A.2d at 102.  We concluded that "a defendant in a criminal prosecution who has properly asserted the right to defend himself and has, under our procedures, effectively waived the assistance of counsel, has the right to self-representation[.]"  Id. at 130, 406 A.2d at 102.  We concluded that the trial court's failure to pursue any inquiry after the defendant stated that he did not want any attorney necessitated reversal of the judgment.  See id. at 131, 406 A.2d at 103.

After Snead, in numerous cases, this Court has recognized that the Sixth Amendment includes a right to self-representation.  For example, in Parren, 309 Md. at 262-63, 523 A.2d at 598, this Court stated that the Sixth Amendment and Article 21 of the Maryland Declaration of Rights guarantee a right to counsel, which encompasses "not only

---

1. The nature of the charges against him, any lesser included offenses, and the range of allowable penalties, including mandatory and minimum penalties, if any;

2. That counsel can render important assistance to him in determining whether there may be defenses to the charges or circumstances in mitigation thereof, and in preparing for and representing him at trial;

3. That even if the defendant intends to plead guilty, counsel may be of substantial assistance in developing and presenting information which could affect the sentence or other disposition;

4. That if the defendant is found to be financially unable to retain private counsel, the Public Defender or the court would, if the defendant wishes, provide counsel to represent him.

Gambrill v. State, 437 Md. 292, 300 n.7, 85 A.3d 856, 860 n.7 (2014) (citation omitted).

the right of a defendant to the effective assistance of a duly licensed attorney at law but also the right of a defendant to appear *in propria persona*." (Citation modified). We explained that "the right to self-representation has been long respected and is supported by centuries of consistent history" and "exists to affirm the dignity and autonomy of the accused and to allow the presentation of what may, at least occasionally, be the accused's best possible defense." Id. at 263, 523 A.2d at 598 (citation modified). And, in Fowlkes v. State, 311 Md. 586, 589, 536 A.2d 1149, 1151 (1988), we stated that, "[u]nder the Sixth Amendment, a defendant [] has an independent right to reject the assistance of counsel and to elect to represent himself." (Citation omitted).

This Court has also consistently recognized that Maryland Rule 4-215 safeguards both the Sixth Amendment right to counsel and right to self-representation. In State v. Brown, 342 Md. 404, 412, 676 A.2d 513, 517 (1996), we acknowledged that Maryland Rule 4-215 "is designed to protect both the right to assistance of counsel and the right to pro se defense provided by the Sixth Amendment." (Citation modified). In Gambrill v. State, 437 Md. 292, 299-300, 85 A.3d 856, 860-61 (2014), we stated that "our recognition of the constitutional implications of the right to counsel and right to self-representation 'was evidenced in Maryland Rule 719, the precursor to Rule 723 c[,]'" which is the predecessor to Maryland Rule 4-215(e). (Quoting Leonard v. State, 302 Md. 111, 121-22, 486 A.3d 163, 168 (1985)). And, in Pinkney, 427 Md. at 92, 46 A.3d at 422, we explained that "Maryland Rule 4-215 was drafted and implemented to protect both the right to the assistance of counsel and the right to self-representation." (Citation omitted).

In addition to the Sixth Amendment, in Maryland, the right of a defendant in a criminal case to counsel is guaranteed by Article 21 of the Maryland Declaration of Rights, which provides that "in all criminal prosecutions, every man hath a right . . . to be allowed counsel[.]" Dykes, 444 Md. at 647-48 & n.1, 121 A.3d at 116 & n.1. "That right also protects a defendant's decision to proceed *pro se*." Id. at 648, 121 A.3d at 116. We have stated that "[t]he right to counsel provisions of Article 21 of the Maryland Declaration of Rights are in *pari materia* with the Sixth Amendment." Parren, 309 Md. at 262 n.1, 523 A.2d at 598 n.1 (citation modified).[9] Maryland 4-215 "was intended to implement both the Sixth Amendment and the Article 21 right to counsel in criminal cases, as well as the Sixth Amendment right of self[-]representation." Lopez v. State, 420 Md. 18, 31, 20 A.3d 812, 819 (2011). Given that both the Sixth Amendment and Article 21 guarantee a right to counsel and a right to self-representation and that Maryland Rule 4-215 implements both, it follows that assertion of the right under Article 21 follows the same procedure for assertion of the right under the Sixth Amendment.

### C. Maryland Rule 4-215(e)

Next, we turn to Maryland Rule 4-215(e), which provides:

> If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request. If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will

___

[9]Recently, though, in Clark v. State, 485 Md. 674, 718, 301 A.3d 241, 267 (2023), we explained that "[t]he right to counsel under Article 21, in ineffective assistance of counsel cases, has been found to be broader than the right to counsel under the Sixth Amendment." (Footnote omitted).

proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel. If the court permits the defendant to discharge counsel, it shall comply with subsections (a)(1)-(4) of this Rule if the docket or file does not reflect prior compliance.[10]

We have consistently held that the requirements of Maryland Rule 4-215 "are mandatory" and that its mandates require strict compliance. Pinkney, 427 Md. at 87, 46 A.3d at 419 (citations omitted).

In interpreting the Maryland Rules, we use the same canons and principles we use to construe statutes. See Pinkney, 427 Md. at 88, 46 A.3d at 420. In Brown & Williamson Tobacco Corp. v. Gress, 378 Md. 667, 676, 838 A.2d 362, 367 (2003), this Court summarized the applicable principles as follows:

In our effort to discern the meaning of a rule, we look first to the words of the rule. When the words are clear and unambiguous, ordinarily we need not go any further. Only when the language of the rule is ambiguous is it necessary that we look elsewhere to ascertain legislative intent. We are also to give effect to the entire rule, neither adding, nor deleting, words in order to give it a meaning not otherwise evident by the words actually used. Finally, we seek to give the rule a reasonable interpretation, not one that is illogical or incompatible with common sense.

(Citation modified).

The predecessors to Maryland Rule 4-215 were Rule 719 (which was amended and

---

[10]Maryland Rule 4-215(a)(1) to (4) provide that the court shall make certain that the defendant received a copy of the charging document containing notice as to the right to counsel, inform the defendant of the right to counsel and the importance of assistance of counsel, advise the defendant of the nature of the charges and allowable penalties (including mandatory penalties, if any), and conduct a waiver inquiry pursuant to Maryland Rule 4-215(b) if the defendant indicates a desire to waive counsel.

renumbered as Rule 723), and Rule 723 (which was later re-designated as Rule 3-305).

See State v. Bryan, 284 Md. 152, 154-55, 395 A.2d 475, 477 (1978); Brown, 342 Md. at

427, 676 A.2d at 524; Pinkney, 427 Md. at 86 n.3, 46 A.3d at 419 n.3.

In 1972, Rule 719, which already "codified the right to counsel in Maryland in

criminal cases[,]" was amended to add section (c), "which specified the questioning and

determination that a judge must undertake to ascertain a defendant's understanding should

he or she have indicated a desire or inclination to waive counsel." Gambrill, 437 Md. at

299, 85 A.3d at 860 (footnotes omitted). At that time, Rule 719(c) provided:

> If, at any stage of the proceeding, an accused indicates a desire or inclination to waive representation, the court shall not permit such a waiver unless it determines, after appropriate questioning in open court, that the accused fully comprehends: (i) the nature of the charges and any lesser-included offenses, the range of allowable punishments, and that counsel may be of assistance to him in determining whether there may be defenses to the charges or circumstances in mitigation thereof; (ii) that the right to counsel includes the right to the prompt assignment of an attorney, without charge to the accused, if he is financially unable to obtain private counsel; (iii) that even if the accused intends to plead guilty, counsel may be of substantial value in developing and presenting material which could affect the sentence; and (iv) that among the accused's rights at trial are the right to call witnesses in his behalf, the right to confront and cross-examine witnesses, the right to obtain witnesses by compulsory process, and the right to require proof of the charges beyond a reasonable doubt.

Id. at 299 n.6, 85 A.3d at 860 n.6 (citation omitted).

By order dated January 31, 1977, as part of the revision of Chapter 700 of the

Maryland Rules of Procedure, this Court approved and adopted Rule 723, entitled

"Appearance—Provision for or Waiver of Counsel," effective July 1, 1977. State v.

Walker, 417 Md. 589, 598, 11 A.3d 811, 817 (2011); Thompson v. State, 284 Md. 113,

123 n.3, 394 A.2d 1190, 1195 n.3 (1978). At that time, Rule 719 was amended and re-

numbered as Rule 723. See Gambrill, 437 Md. at 300, 85 A.3d at 860.[11] Rule 723(c) required an inquiry to be made when a defendant "indicate[d] a desire or inclination to waive counsel" and provided that the court could not accept the waiver until after appropriate questioning of the defendant as set forth in the Rule. Gambrill, 437 Md. at 300 n.7, 85 A.3d at 860 n.7 (citation omitted); see also Thompson, 284 Md. at 125-26, 394 A.2d at 1196. In Leonard, 302 Md. at 122, 486 A.2d at 168, we stated that Rule 723(c) established that "when a defendant properly asserts the right to proceed *pro se* and has complied with the waiver provisions under Rule 723, the defendant has the right to self-representation absolutely."

By order dated April 6, 1984, this Court approved and adopted, effective July 1, 1984, a revision of the Maryland Rules. See Leonard, 302 Md. at 122 n.2, 486 A.2d at 168 n.2; see also Walker, 417 Md. at 600, 11 A.3d at 818. At that time, Rule 723 was re-designated as Maryland Rule 4-215. See Gambrill, 437 Md. at 300, 85 A.3d at 860-61; Leonard, 302 Md. at 122 n.2, 486 A.2d at 168 n.2. This Court added section (d) to Maryland Rule 4-215, which in 1986 was re-designated as section (e) without substantive change, see Gambrill, 437 Md. at 300, 85 A.3d at 861; Fowlkes, 311 Md. at 590 n.1, 536 A.2d at 1151 n.1, and provided:

> If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request. If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise the defendant that if new counsel

---

[11]In Thompson, 284 Md. at 123 n.3, 394 A.2d at 1195 n.3, we observed that, compared to Rule 723 as adopted in 1977, "[f]ormer Rule 719, and its precursor Rule 723, included less elaborate provisions for the appointment and waiver of counsel."

does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel. If the court permits the defendant to discharge counsel, it shall comply with subsections (a)(1)-(4) of this Rule if the docket or file does not reflect prior compliance.

Fowlkes, 311 Md. at 602-03, 536 A.2d at 1157-58. The language of Maryland Rule 4-215(e) is identical today; in other words, the language of the section remains unchanged from its promulgation over 40 years ago.

### Case Law Interpreting Maryland Rule 4-215(e) and Setting Forth the Three-Step Process

We next discuss case law construing Maryland Rule 4-215(e) and setting forth the three-part process for application of section (e) of the Rule. In Pinkney, 427 Md. at 81, 46 A.3d at 416, we held that the trial court was not required to inform the defendant of his right to self-representation "where the trial court denied [the defendant's] unmeritorious request to discharge trial counsel and [the defendant] made no statement that reasonably could be understood as indicating a desire to invoke the right to self-representation." We concluded that the plain and unambiguous language of Maryland Rule 4-215(e) does not require a trial court to advise a defendant of the option to proceed self-represented where a request to discharge counsel is denied as unmeritorious and the defendant had made no statement that could have reasonably been construed as indicating a desire to proceed self-represented. See id. at 89-90, 46 A.3d at 420-21.

We explained that Maryland Rule 4-215(e) "sets forth the steps that must be taken

when a defendant wishes to waive his or her right to counsel by discharging an attorney who has entered an appearance on the defendant's behalf." Id. at 93, 46 A.3d at 423 (citation modified). The first step begins with the trial court "inquiring about the reasons underlying a defendant's request to discharge the services of his trial counsel and providing the defendant with an opportunity to explain those reasons." Id. at 93, 46 A.3d at 423 (citations omitted). The second step involves the trial court considering whether the defendant's reasons are meritorious. See id. at 93, 46 A.3d at 423. With respect to the second step, "the record must be sufficient to reflect that the court actually considered the reasons given by the defendant." Id. at 93, 46 A.3d at 423 (citation modified). The third and final step concerns the trial court's determination as to the meritoriousness of the reasons and its subsequent action. If the trial court determines that a defendant's reasons are meritorious, it must grant the defendant's request to discharge counsel. See id. at 94, 46 A.3d at 423. On the other hand, if the trial court determines that the reasons are not meritorious, the trial court may proceed in one of several ways:

> (1) deny the request and, if the defendant rejects the right to represent himself and instead elects to keep the attorney he has, continue the proceedings; (2) permit the discharge in accordance with the Rule, but require counsel to remain available on a standby basis; (3) grant the request in accordance with the Rule and relieve counsel of any further obligation. . . . [T]he trial [court] also has the option, after concluding that the reasons set forth by the defendant are not meritorious, to deny the request and go forth to trial.

Id. at 94, 46 A.3d at 423 (citation modified).

In Taylor, 431 Md. at 621, 624, 629, 66 A.3d at 702, 704, 707, where the trial court denied the defendant's request to replace a court-appointed attorney with private counsel after being advised that private counsel's appearance would only be entered if the court

granted a one-week continuance, we held that, even assuming (without deciding) that statements made to the trial court by the defendant and his attorneys were collectively sufficient to require a Rule 4-215(e) inquiry into the merits of the defendant's purported request to discharge counsel, the trial judges who considered the request(s) complied with the requirements of Maryland Rule 4-215(e). We did not address the question of whether a request to discharge counsel that is contingent on the court granting a request to postpone a trial date is sufficient to trigger an inquiry under Maryland Rule 4-215(e). Rather, "[w]e accept[ed], for the sake of argument, that the proper analysis of th[e] case should be under Md. Rule 4-215(e) and the cases construing that Rule." Id. at 634-35, 66 A.3d at 710 (footnote omitted). We explained that the trial judges gave the defendant an opportunity to explain the reasons underlying the requests and, after considering what the defendant advised, the trial court found that the reasons did not merit a discharge of counsel and/or a postponement and denied his requests. See id. at 629, 66 A.3d at 707. "Rule 4-215(e) and our case law construing that Rule require no more of a trial court." Id. at 629, 66 A.3d at 707.

In Gambrill, 437 Md. at 294, 85 A.3d at 857, where, on the day of trial, the defendant's public defender advised the trial court that he wanted to request a postponement on the defendant's behalf because the defendant had indicated that he wanted to hire private counsel, we determined that the trial court "could have reasonably concluded from these statements that [the defendant] wanted to discharge his attorney and, thus, erred in failing to permit [the defendant] to explain the reasons for his request to

- 28 -

discharge counsel, as required by Rule 4-215(e)."[12]  Without making an inquiry of the

defendant, the trial court denied the postponement.  See id. at 296, 85 A.3d at 858.

We stated that, although the defendant's "request to hire a new attorney was coupled

with a request for a postponement and may not have been a paradigm of clarity, its inherent

ambiguity did not relieve the judge of his obligation to comply with Rule 4-215(e); its

ambiguity mandated judicial inquiry followed by a determination."  Id. at 305, 85 A.3d at

863-64.[13]  We explained that, although Maryland Rule 4-215(e) does not define what

constitutes a "request," we have established that a request to discharge counsel is "any

statement from which a court could conclude reasonably that the defendant may be inclined

to discharge his counsel."  Id. at 302, 85 A.3d at 862 (citation modified).

### D. Applying the Principles Above to this Case

#### *Assertion of the Right to Self-Representation*

Mr. Goodrich contends that the information conveyed to the court by his attorney

---

[12]On the day of trial, prior to the start of trial, the trial court was advised that the defendant, if convicted, was facing a potential violation of probation.  See Gambrill, 437 Md. at 295, 85 A.3d at 857.  Defense counsel advised the court that the defendant "was contemplating hiring a specifically named attorney, 'if we can't work his case out', whereupon the judge referred the parties to another judge in the circuit court to discuss the disposition of the probation violation case to which the other judge was assigned[.]"  Id. at 295, 85 A.3d at 857-58.  When the parties returned to the courtroom, defense counsel advised that, on behalf of the defendant, he was requesting a postponement and the defendant "indicates that he would like to hire private counsel in this matter."  Id. at 296, 85 A.3d at 858.

[13]The case did not involve a defendant's purported assertion of the right to self-representation or any issue as to whether the right had truly been asserted; the case concerned solely the court's duty to permit a defendant to explain the reasons for a request to discharge counsel and retain a new attorney.  See Gambrill, 437 Md. at 294, 306-07, 85 A.3d at 857, 864.

concerning him wanting to represent himself "triggered the judge's duty to determine, by appropriate inquiry, whether he truly wanted to exercise that right under *Snead v. State,* 286 Md. 122 (1979), and then to engage in the requisite inquiry under Maryland Rule 4-215(e) to ensure a knowing and voluntary waiver of his right to counsel." Mr. Goodrich argues that after the circuit court began the requisite inquiry, the court violated his constitutional right to self-representation and the mandatory requirements of Maryland Rule 4-215(e) by not questioning him further to determine whether he clearly and unequivocally asserted the right to represent himself and not making a ruling under Maryland Rule 4-215(e) as to whether the purported request was meritorious. We agree with Mr. Goodrich that the information conveyed by his attorney triggered an inquiry, which the circuit court conducted, but we view the circuit court's interaction with him during the inquiry differently than he assesses it.

As we see it, in keeping with our holding in Snead, 286 Md. at 125-28, 406 A.2d at 100-01, in this case, the circuit court conducted an inquiry to determine whether Mr. Goodrich clearly and unequivocally asserted his right to self-representation. Unlike in Snead, 286 Md. at 125-27, 406 A.2d at 100, here, the circuit court conducted the requisite inquiry, and, as the Appellate Court explained, gave Mr. Goodrich a forum in which "to speak at length, offered clarifying procedural information, and asked follow-up questions[,]" Goodrich, 2024 WL 4986198, at *4, and Mr. Goodrich failed to make a clear and unequivocal assertion of the right. In fact, in responding to the administrative judge, Mr. Goodrich did not make a request to represent himself at all. Rather, Mr. Goodrich stated that he wanted a lawyer and did not want a postponement of the trial date.

- 30 -

It is well established that in order to trigger a Rule 4-215(e) inquiry by the trial court "regarding whether the defendant desires to waive his right to counsel and proceed *pro se*, the defendant must make a statement that reasonably indicates that he desires to invoke the right to self-representation." Pinkney, 427 Md. at 90, 46 A.3d at 421. Given that a statement that would reasonably apprise a court of a defendant's wish to discharge counsel will trigger a Rule 4-215(e) inquiry, it follows that were a defendant to make such a statement during the inquiry, in some instances, it may be reasonable to conclude that a court should inquire further of the defendant to determine whether the defendant is truly asserting the right to self-representation. This is not such an instance. Where a trial court has made an inquiry by advising the defendant that the court has received information that the defendant made a statement indicating a desire for self-representation and given the defendant a reasonable opportunity to assert the right and explain any reasons for the purported request, and the defendant fails to do so, our case law and Maryland Rule 4-215(e) do not demand more.

In this case, in response to the court's inquiry, Mr. Goodrich affirmatively told the court that he wanted an attorney and never said that he wanted to represent himself. Mr. Goodrich characterizes the statement in which he advised the court that he wanted an attorney as a statement in which he "expressed a general preference for an attorney [that] was *immediately* qualified by his statements that he wished to go forward and represent himself to face trial in a timely manner." However, the statement that Mr. Goodrich contends made most clear that he wanted self-representation—that he was willing to risk whatever it takes to keep the current trial date—was not a statement that reasonably could

have been understood to be an expression of the desire to invoke the right to self-representation.

Mr. Goodrich's statement that he was willing to risk whatever it took to keep the current trial date could reasonably have been interpreted to mean that he was willing to expose himself to a negative or unfavorable outcome in order to keep the trial date. In other words, reasonable interpretations of the statement are that, to keep the current trial date, Mr. Goodrich would have been willing to risk that going to trial on the scheduled date would result in a guilty verdict or a lengthy sentence of imprisonment. Mr. Goodrich's statement, however, did not include a description of what he was willing to risk, conditioned his willingness to take the risk on keeping the current trial date, and was made after his earlier statement that he wanted an attorney. Under these circumstances, the statement was no more or less indicative of either whether Mr. Goodrich wanted to have counsel, albeit unprepared, represent him to keep the current trial date or whether he wanted to represent himself on the scheduled trial date.[14] Given the colloquy that occurred, particularly because Mr. Goodrich responded that he would like an attorney, it would not have been reasonable for the court to conclude that the statement that he was willing to risk whatever it took to keep the current trial date was an expression of a desire for self-

---

[14]In addition, at the time that Mr. Goodrich appeared before the administrative judge, he was aware that the State had requested a postponement because, among other reasons, the prosecutor had not subpoenaed out-of-state witnesses, and the prosecutor had stated that she was unavailable. Mr. Goodrich knew that the State had indicated that it could not proceed on the currently set trial date. Under these circumstances, it is just as likely that Mr. Goodrich's statement that he was willing to risk whatever it took to keep the current trial date was an indication that he was willing to risk finding out whether the State could proceed or not on the scheduled trial date.

representation that necessitated further questioning.

Nonetheless, Mr. Goodrich contends that because he made this vague statement, the circuit court had a duty "to properly address the request for self-representation[,]" *i.e.*, to ask additional questions to elicit whether he clearly and unequivocally invoked the right to self-representation. Mr. Goodrich's position ignores that the circuit court had already engaged in an inquiry to elicit whether he wanted to assert the right to self-representation and that, during the inquiry, he clearly and unambiguously advised the court of two things: (1) that he wanted an attorney and (2) that he did not want a postponement of the trial date. The circuit court advised Mr. Goodrich that the court had been informed that he wanted to represent himself, explained the nature of evidence that may be introduced at trial and the importance of representation, and gave Mr. Goodrich multiple opportunities to say whether he wanted to represent himself. Under these circumstances, the circuit court's inquiry was reasonable and complied with our holding in Snead, 286 Md. at 127-28, 406 A.2d at 101, that to safeguard a defendant's Sixth Amendment right to self-representation, a court must conduct an inquiry to determine whether the defendant clearly and unequivocally asserts the right to self-representation. Mr. Goodrich, however, did not assert the right to self-representation.

### *Forcing a Defendant to Accept an Attorney*

Citing Faretta, 422 U.S. at 833-34, Mr. Goodrich contends that the circuit court's colloquy with him, particularly its comment, "Well, sir, I want you to have an attorney, given what you're facing," demonstrated that the circuit court, "however well-meaning,

had ultimately failed to give the required judicial deference to [his] choice."[15]  In Faretta,

422 U.S. at 807-08, 835, it was clear that the defendant had asserted the right to self-

representation, and it was not necessary for the Supreme Court to address whether the right

had been asserted.  Similarly, in Snead, 286 Md. at 125-26, 131, 406 A.2d at 100, 103, the

defendant unequivocally stated that he did not want an attorney, and the trial court failed

to make any inquiry whatsoever of the defendant to uncover whether he truly wanted to

represent himself.

In this case, the circuit court inquired of Mr. Goodrich and the inquiry revealed that

Mr. Goodrich wanted an attorney and opposed the postponement request because he did

not want to spend more time in custody awaiting trial, not that he opposed the

postponement request because he wanted to represent himself at trial, i.e., not that he was

asserting the right to self-representation.  This is confirmed both by the circumstance that

Mr. Goodrich never advised the court that he wanted to represent himself and that on the

rescheduled trial date, Mr. Goodrich's case proceeded to trial with him represented by

counsel, and he raised no issue with respect to self-representation.  Unlike in Faretta, 422

U.S. at 835-36, where the trial court forced the defendant to accept a public defender

against his will, and in Snead, 286 Md. at 131, 406 A.2d at 103, where it was not clear

given the lack of inquiry whether it was appropriate for the trial court to deny the

defendant's request to proceed self-represented and to have him be represented by counsel,

---

[15]Mr. Goodrich also contends that, with this remark, the administrative judge demonstrated that he was either "unaware of the dictates of *Faretta* or simply made no effort to apply them."

the circuit court did not force Mr. Goodrich to accept counsel against his will.

Case law involving an allegation that a court has violated a defendant's constitutional right to self-representation generally involves the scenario in which a defendant who is represented by counsel expresses a desire for self-representation and a court denies the request, without making an inquiry as to whether the defendant is truly invoking the right. See, e.g., Snead, 286 Md. at 125-28, 406 A.2d at 100-01. In cases in which the United States Supreme Court and this Court have concluded that the defendant's right to self-representation was violated, the violation has been based on a ruling that resulted in the defendant being forced to trial with an attorney that the defendant did not want. See, e.g., id. at 131, 406 A.2d at 103 ("[T]here is no way to ascertain on appellate review whether it was proper for the court to refuse to permit [the defendant] to defend Pro se and to force a lawyer upon him."). In Faretta, 422 U.S. at 826, the United States Supreme Court explained that the constitutional right to self-representation has roots in the English common law rule that provides "no person charged with a criminal offence can have counsel forced upon him against his will." (Citation modified). "An unwanted counsel 'represents' the defendant only through a tenuous and unacceptable legal fiction." Snead, 286 Md. at 128, 406 A.2d at 101. In this case, upon inquiry, Mr. Goodrich did not make a statement that reasonably apprised the administrative judge that he had a desire to represent himself and he was not forced to trial with an attorney against his will, which is the harm that the Supreme Court of the United States and this Court sought to avoid in Faretta and Snead, respectively.

### *The Nature of the Colloquy*

Mr. Goodrich disapproves of the manner in which the circuit court conducted the inquiry and insists that after he stated that he would like an attorney, the court was nonetheless required to engage in further questioning to determine whether he wanted to represent himself. Mr. Goodrich criticizes the circuit court for beginning the inquiry by advising him of the benefits of counsel. Mr. Goodrich complains that the court began the inquiry by telling him "that an attorney could be 'extremely helpful,' that he 'needed help,' and that defense counsel was ready, willing, and able to represent him." In addition, Mr. Goodrich takes issue with the circuit court stating: "And I want you - - I want you to have the best possible defense that you can get. And, to me, that sounds like we're going to have to postpone this case to March. But, if you want to tell me that you're not happy about that, I'm willing to listen to you." According to Mr. Goodrich, the judge's remarks indicated that he had already decided to postpone the case and that the judge did not seek to ascertain whether Mr. Goodrich truly sought to represent himself. We disagree.

The administrative judge's remarks were consistent with the principle that a court should be careful to make a defendant "aware of the dangers and disadvantages of self-representation" so that the choice to engage in self-representation can be "made with eyes open." Faretta, 422 U.S. at 835 (citation modified). And, while it is accurate that the administrative judge stated that it sounded as if the case had to be postponed, the judge prefaced the remarks by advising Mr. Goodrich that he had been informed that he stated that he wanted to represent himself and advising him that it "is a big decision" given what he was facing. The judge listened to Mr. Goodrich's concerns in a considerate, attentive

manner, and gave Mr. Goodrich more than one opportunity to express his desire to represent himself if that was what he wanted.

During the colloquy, the circuit court attempted to elicit information from Mr. Goodrich concerning whether he wanted to represent himself or not. The circuit court advised Mr. Goodrich that it had been informed that he was not pleased about the postponement and that he had stated he wanted to represent himself. The judge at separate times either told Mr. Goodrich that he would be happy to hear from him or asked Mr. Goodrich if he had something he wanted to tell the court. In response, Mr. Goodrich said he would like an attorney. Where a trial court conducts an inquiry to ascertain whether a defendant wants to represent himself and the defendant expresses a desire to be represented by counsel, the trial court is placed in a problematic position. If the court were to question the defendant further, resulting in the defendant waiving the right to counsel, the defendant could, on appeal, rely on his earlier request for an attorney and argue that although he participated in the waiver colloquy, he had been denied the right to counsel due to the court's questioning requiring him to make a choice between the right to counsel and self-representation.

In this case, Mr. Goodrich's response that he would like an attorney showed that he understood that the court was inquiring into the issue of whether he wanted to represent himself or not. It is evident from the record that the court conducted a reasonable inquiry, and that Mr. Goodrich, who understood the nature of the inquiry, at no point indicated a desire to discharge counsel or to represent himself, but instead expressed the exact opposite—that he wanted an attorney. We refuse to require that where, during an inquiry

by the court, a defendant advises that he wants an attorney and does not make a request to represent himself, the court must question the defendant further to determine whether the defendant truly wants a lawyer or not.

### *Lack of Present Intent*

The State contends that any request for self-representation by Mr. Goodrich was an equivocal request, conditioned on the circuit court denying the joint request for a postponement and, thus, was not a clear and unambiguous assertion of the right to self-representation. This assumes, though, that Mr. Goodrich made a request for self-representation in the first place. Here, as the record demonstrates, during the administrative judge's inquiry, Mr. Goodrich did not express a desire that could reasonably be understood as a request for self-representation. More to the point, though, even if Mr. Goodrich's responses could be construed as an unspoken or veiled request to represent himself (which would not have been sufficient to trigger additional questioning from the court), Mr. Goodrich did not express a present intent or desire to discharge counsel and represent himself.

In Gambrill, 437 Md. at 302-03, 85 A.3d at 862, when discussing Taylor, we stated that the case stood for the proposition that collective statements by defense counsel and the defendant at various proceedings were not sufficient to trigger an inquiry under Maryland Rule 4-215(e), because the private attorney's position was that he would represent the defendant only if a continuance was granted. We explained that, although it has been established that a request to discharge counsel is "any statement from which a court could conclude reasonably that the defendant may be inclined to discharge counsel[,]" an

assertion that private counsel would represent the defendant if a postponement was granted did not trigger a Maryland Rule 4-215(e) colloquy. Gambrill, 437 Md. at 302-03, 85 A.3d at 862 (citation modified). Specifically, we stated:

> In *Taylor,* 431 Md. at 623-24, 66 A.3d at 703-04, on the eve of trial, Taylor's public defender appeared before a number of judges with a private attorney, who had represented Taylor in the past, to present a postponement request in which there was embedded a conditional assertion that the private attorney would represent Taylor, but would only enter his appearance "if the court will grant a one-week continuance." We did not find the collective statements during the various proceedings to be sufficient to trigger a Rule 4-215(e) colloquy, especially because the private attorney voiced that that he would represent Taylor only were a continuance to be granted.

Gambrill, 437 Md. at 302-03, 85 A.3d at 862. In this case, just as in Taylor, there was no statement, explicit or implicit, expressing a present intent by Mr. Goodrich to discharge counsel.

In its opinion, the Appellate Court appeared to accept the premise that Mr. Goodrich's responses to the circuit court could be construed as a request to represent himself if the joint postponement request was denied. See Goodrich, 2024 WL 4986198, at *4. The Appellate Court concluded, however, that Mr. Goodrich's request did not trigger a Rule 4-215(e) inquiry because Mr. Goodrich did not have the present intent to discharge counsel. See id. The Appellate Court relied on a line of cases, including Henry v. State, 184 Md. App. 146, 964 A.2d 678 (2009), aff'd, 419 Md. 588, 19 A.3d 944 (2011), and Davis, 415 Md. 22, 997 A.2d 780, indicating that, to trigger a Rule 4-215(e) inquiry, a defendant must communicate a present intent to discharge counsel. See Goodrich, 2024 WL 4986198, at *3.

In Henry, 184 Md. App. at 169, 171, 964 A.2d at 691, 692, the Appellate Court determined that Maryland Rule 4-215(e) had not been triggered where "defense counsel simply requested a continuance so that [the defendant] and his mother could attempt to hire private counsel" because the defendant "did not clearly indicate a present intent to discharge his attorney." In Davis, 415 Md. at 25, 33, 997 A.2d at 781-82, 786, where defense counsel advised the court on the morning of trial that, prior to trial, the defendant had expressed unhappiness with the attorney's evaluation of the case, and that the defendant wanted new counsel, we stated that, "[a]lthough we agree[d] with the State that a Rule 4-215(e) inquiry is not mandated unless counsel or the defendant indicates that the defendant has a present intent to seek a different legal advisor, . . . here, the Court was at least required to inquire further so it could determine whether [the defendant] still maintained that intent." We explained that the Appellate Court had set forth the requirement for "a current and established intent to discharge counsel in *Henry*[.]" Davis, 415 Md. at 33, 997 A.2d at 786. We stated that, in Henry, "neither Henry nor his counsel conveyed to the court any displeasure with his current representation, leading the court to appropriately assume that he was not requesting to discharge counsel, but merely petitioning for a continuance so that he could attempt to engage [a different attorney]." Davis, 415 Md. at 34, 997 A.2d at 787 (footnote omitted). We stated that "[t]he triggering event for Rule 4-215(e) is a request to *discharge* counsel, not a request to seek new counsel while holding on to current counsel as a secondary option." Id. at 34 n.5, 997 A.2d at 787 n.5.

In its opinion in this case, citing Henry and Davis, the Appellate Court determined

that "[a] defendant must have a present intent to discharge counsel in order to mandate application of Rule 4-215(e)[,]" and concluded that, "[u]pon examination . . . , it became clear that [Mr. Goodrich] did not have a present wish to discharge his counsel as per *Davis*." Goodrich, 2024 WL 4986198, at *3-4. With the exception of the seeming acceptance of the premise that Mr. Goodrich's remarks constituted a request for self-representation, we agree with the Appellate Court's analysis. Whatever Mr. Goodrich may have meant by saying that he was "willing to risk whatever it takes" to keep the same trial date, his willingness was contingent on the court denying the joint request for a postponement and this was not a statement from which the court could have concluded that he had the present intent to represent himself.

We decline to prescribe that where, upon inquiry by the court, a defendant responds that he would like an attorney and does not make a request demonstrating a present intent to discharge counsel or represent himself, the court must continue questioning the defendant. We conclude that, under the circumstances of this case, the administrative judge was not required to question Mr. Goodrich further concerning his right to self-representation where Mr. Goodrich's collective statements in responding to the administrative judge were insufficient for the court to reasonably conclude that he was making a request to represent himself—particularly where Mr. Goodrich advised that he indeed wanted an attorney.

### *Compliance with Maryland Rule 4-215(e) and <u>Snead</u>*

Given the issues raised in this case, it is useful to provide an overview of the interaction between our holding in <u>Snead</u> and Maryland Rule 4-215(e). Where a defendant

is represented by counsel and, either personally or through counsel, makes a request for self-representation, the defendant need not express dissatisfaction with an attorney to trigger an inquiry under Maryland Rule 4-215(e) or have the request for self-representation granted. Although what had been described as a two-step process in Snead using Rule 723(c), see Snead, 286 Md. at 128, 130-31, 406 A.2d at 101, 102-03, is now embodied in what we have referred to as a three-step process under Maryland Rule 4-215(e), Snead has not been overruled or abrogated. See Pinkney, 427 Md. at 93-94, 96, 46 A.3d at 423, 424-25.

The same application of Snead exists now with Maryland Rule 4-215(e) as with Rule 723(c). Per its plain language, Maryland Rule 4-215(e) is triggered where a defendant expresses a desire to discharge counsel; where that request involves the desire for self-representation, the requirements set forth in Snead are also triggered, and a court must determine whether a defendant is truly asserting the right to self-representation. The first step of the analysis set forth in Snead—ascertaining whether the defendant clearly and unequivocally wants to engage in self-representation—depending on the circumstances of the case, may be conducted in tandem with or separate from the first two steps of the inquiry under Maryland Rule 4-215(e), in which, once a defendant requests permission to discharge an attorney, the court must permit the defendant to explain the reasons for the request and carefully consider the request. The salient point is that where a defendant has expressed a desire for self-representation, the court must, by appropriate inquiry, ascertain whether the defendant is clearly and unequivocally invoking the right to self-representation.

- 42 -

At what has been described as the third step of the process under Maryland Rule 4-215(e), a court must determine whether a request to discharge counsel is meritorious or not and take action in accordance with its determination.  See Pinkney, 427 Md. at 93-94, 46 A.3d at 423.  Maryland Rule 4-215(e) provides that, "[i]f the court finds that there is a meritorious reason for the request to discharge counsel, the court shall permit the discharge of counsel[.]"  If a defendant clearly and unequivocally asserts the right to self-representation, rather than a request to discharge one attorney to obtain another, given the nature of the request, the request to discharge counsel would likely almost always be found to be a meritorious one.  See Faretta, 422 U.S. at 834 ("The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction.  It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage."); Snead, 286 Md. at 129, 406 A.2d at 102 ("[T]echnical legal knowledge, as such, is not relevant to an assessment of an accused's knowing exercise of the right to defendant himself."  (Citation modified)).  The record, however, must show that the defendant is competent to waive the right to counsel and that the defendant has knowingly and intelligently done so.  See Snead, 286 Md. at 129, 406 A.2d at 102.[16]

---

[16]In Snead, 286 Md. at 129, 406 A.2d at 102, we stated:

> [A] criminal defendant does have a constitutional right to proceed without counsel if he intelligently and competently waives his right to counsel.  But the standard for waiver of the right to counsel remains unchanged.  The record must show that the defendant is competent to waive the right to counsel, and that he knowingly and intelligently has done so after being made aware of the advantages and disadvantages of self-representation.

(Citation modified).

When the right to self-representation is properly asserted, in most instances, whether the defendant will have the opportunity to exercise the right will depend on the waiver of counsel colloquy. That determination, the last step of the analysis set forth in Snead— whether the defendant knowingly and intelligently waives the right to counsel where the defendant has clearly and unequivocally invoked the right to self-representation—is included in Maryland Rule 4-215(e), which provides that if the court permits the defendant to discharge counsel, it shall comply with Maryland Rule 4-215(a)(1)-(4) if the docket or file does not reflect prior compliance. Maryland Rule 4-215(a)(4) requires that the court conduct a waiver inquiry pursuant to Maryland Rule 4-215(b), under which the court may not accept the waiver of counsel until, after examination, determining and announcing on the record that the defendant knowingly and voluntarily waives the right to counsel.

Under the circumstances of this case, Mr. Goodrich's counsel's advisement to the circuit court that Mr. Goodrich "may" and was "saying that he would" want to represent himself triggered an inquiry under Snead and Maryland Rule 4-215(e), which the circuit court conducted. When Mr. Goodrich did not express a desire to represent himself or discharge counsel, based on the plain language of Maryland Rule 4-215(e), the circuit court was under no obligation under the Rule to determine whether a request that had not been made was meritorious or not, or under Snead or Maryland Rule 4-215(e) to conduct a waiver of counsel inquiry. To be sure, the circuit court did not provide an explicit ruling as to whether Mr. Goodrich had asserted the right to self-representation, but the colloquy was sufficient to comply with our holding in Snead and the mandates of Maryland Rule 4-

- 44 -

215(e).[17]  Although we have held that Maryland Rule 4-215(e) is triggered by "[a]ny statement that would reasonably apprise a court of defendant's wish to discharge counsel . . . regardless of whether it came from the defendant or from defense counsel[,]" Davis, 415 Md. at 32, 997 A.2d at 786, and that the requirements of the Rule are mandatory and require strict compliance, see, e.g., Pinkney, 427 Md. at 87, 46 A.3d at 419; Moten v. State, 339 Md. 407, 411, 663 A.2d 593, 596 (1995), in this case, when, after reasonable inquiry, Mr. Goodrich did not express a desire from which the court could reasonably have concluded that he wanted to represent himself or to discharge counsel, there was no further action for the court to take under the Rule or our holding in Snead.[18]

### E. Conclusion

For the reasons discussed herein, we conclude that the circuit court did not violate Mr. Goodrich's right to self-representation under the Sixth Amendment, Article 21 of the

---

[17]Under the circumstances of this case and in any case in which an inquiry has been triggered under Snead and a court must ascertain whether a defendant has clearly and unequivocally asserted the right to self-representation, although not explicitly mandated by our holding in Snead that the court announce its determination on the record, it would be desirable for purposes of appellate review and the parties' understanding of the proceedings for the court to do so.

[18]It is worth noting that, even if Mr. Goodrich had made a clear and unambiguous request to represent himself, which he did not, the circuit court was not required to deny the joint request for postponement in order to give him the opportunity to represent himself on the scheduled trial date. Although a defendant has a constitutional right to self-representation, a defendant does not have a constitutional right or a right under Maryland Rule 4-215(e) to have the postponement of a trial date denied in order to exercise the right to self-representation on a particular occasion. Where a defendant expresses a desire to discharge counsel or to engage in self-representation, the trial court has the discretion to grant or deny a request for postponement, regardless of whether the defendant is to be self-represented or not. See Md. R. 4-215(e) ("If the court finds that there is a meritorious reason for the defendant's request, the court shall . . . continue the action if necessary[.]").

- 45 -

Maryland Declaration of Rights, or Maryland Rule 4-215(e).

                              **JUDGMENT OF THE APPELLATE COURT OF
                              MARYLAND AFFIRMED.   PETITIONER TO
                              PAY COSTS.**